Eugene P. Ramirez (State Bar No. 134865)
  eugene.ramirez@manningkass.com
Lynn Carpenter (State Bar No. 310011)
  lynn.carpenter@manningkass.com
Kayleigh Andersen (State Bar No. 306442)
  kayleigh.andersen@manningkass.com
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, COUNTY OF
RIVERSIDE, SHAWN HUBACHEK, and
JIMMIE MCGUIRE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.L. a minor by and through the Guardian Ad Litem Kristine Llamas-Leyva, individually and as successor-in-interest to JOHNNY RAY LLAMAS, deceased; V.L., by and through the Guardian Ad Litem Amber Sietsinger, individually and as successor-in-interest to JOHNNY-RAY LLAMAS deceased; and CAROLYN CAMPBELL, individually, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF RIVERSIDE; and DOES 1¬10, inclusive, <br><br> Defendant. | Case No.: 5:24-cv-00249-CAS(SPx) <br> Hon. Christina A. Snyder <br><br> **NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> *Filed concurrently with* <br> *1. Proposed Judgment;* <br> *2. Statement of Unconverted Facts;* <br> *3. Declaration of Kayleigh Andersen* <br><br> Date:    Monday, June 23, 2025 <br> Time:    10:00 am <br> Crtrm.:  Courtroom 8D__ <br><br> *Action Filed:      02/01/2024* |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Monday, June 23, 2025, at 10:00 a.m., or as soon thereafter the matter may be heard, in Courtroom 8D of the above entitled court located at 350 West First Street, Los Angeles, California 90012, Defendants County of Riverside, Shawn Hubachek, and Jimmie McGuire (collectively "Defendants") will move this Court for an order granting summary judgment in their favor based on plaintiffs S.L., and her Guardian ad Litem, V.L., and her Guardian ad Litem, and Carolyn Campbell's, an individual, First Amended Complaint.

This Motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure and upon the following grounds:

1.      Defendants Sergeant Shawn Hubachek, and Deputy Jimmie McGuire are entitled to judgment on Plaintiffs' first cause of action for excessive force under 42 U.S.C. § 1983 because under the uncontroverted facts, their use of force was objectively reasonable under the totality of the circumstances.  Further, there is no evidence that Sgt. Hubachek or Deputy McGuire violated the decedent's clearly established constitutional rights at the time of the incident, which entitles them to qualified immunity.

2.      Defendants Sergeant Shawn Hubachek, and Deputy Jimmie McGuire are entitled to judgment on plaintiffs' second cause of action for denial of medical care under 42 U.S.C. § 1983 because medical care was promptly summoned to the scene when it was safe to do so.  Further, there is no evidence that Sgt. Hubachek or Deputy McGuire violated the decedent's clearly established constitutional rights at the time of the incident, which entitles them to qualified immunity.

3.      Defendants Sergeant Shawn Hubachek, and Deputy Jimmie McGuire are entitled to judgment on plaintiffs' third cause of action for substantive due process/interference with familial relations under 42 U.S.C. § 1983 because there is no evidence that Sgt. Hubachek or Deputy McGuire acted with deliberate indifference and/or a purpose to harm unrelated to legitimate law enforcement objectives.  Further,

there is no evidence that Sgt. Hubachek or Deputy McGuire violated any clearly established constitutional rights at the time of the incident, which entitles them to qualified immunity.

4.    Defendant County of Riverside is entitled to judgment on plaintiffs' fourth and fifth causes of action for *Monell* liability – unconstitutional custom, practice, and policy/failure to train under 42 U.S.C. § 1983 because Sgt. Hubachek and Deputy McGuire used only objectively reasonable force under the totality of the circumstances.  Further, there is no evidence that the County had an unlawful custom, practice, or policy, failed to train its deputies, and/or had an authorized policymaker approve a subordinate's decision and the basis for it.

5.    Defendants are entitled to judgment on plaintiffs' sixth cause of action for battery - wrongful death and plaintiffs' seventh cause of action for negligence - wrongful death because Sgt. Hubachek and Deputy McGuire used only objectively reasonable force under the totality of the circumstances.  For the same reasons no constitutional violations occurred, no violations of California law were committed.

6.    Defendants are entitled to judgment on plaintiffs' ninth cause of action for violation of the Bane Act because there is no evidence that Sgt. Hubachek or Deputy McGuire acted with the specific intent to violate the decedent's right to be free from an unreasonable seizure.

7.    Defendants are entitled to summary judgment on the first, second, third, fourth, fifth, sixth, seventh, and eighth causes of actions brought by Plaintiffs S.L., V.L., and their respective guardians ad litem, because each lacks standing to bring these claims.

8.    Similarly, Defendants are entitled to summary judgment on the third, fourth, fifth, sixth, seventh, and eighth causes of actions brought by Decedent's mother, Plaintiff Carolyn Campbell because she lacks standing to bring any wrongful death and survivorship claims.

1   This motion is made following the conference of counsel pursuant to L.R. 7-3
2   which took place on May 7 and 14, during which counsel for defendants and
3   counsel for plaintiffs engaged in several meet and confer efforts and discussed the
4   merits of the motion in detail over the phone.  The parties, however, were unable to
5   resolve the issues informally, necessitating the instant motion.

6   This Motion will be based upon this Notice, the Memorandum of Points and
7   Authorities, the Declarations (and any exhibits attached thereto), the Separate
8   Statement of Undisputed Material Facts and Conclusions of Law, all pleadings,
9   records, and papers on file in this action, and upon such other oral and documentary
10  evidence as may be presented at the hearing of this Motion.

11

12  DATED:  May 16, 2025          **MANNING & KASS**
13                                **ELLROD, RAMIREZ, TRESTER LLP**

14

15                          By: _____/s/ Kayleigh Andersen_____
16                              Eugene P. Ramirez
                                Lynn L. Carpenter
17                              Kayleigh Andersen
                                Attorneys for Defendants, COUNTY OF
18                              RIVERSIDE, SHAWN HUBACHEK, and
19                              JIMMIE MCGUIRE

20

21

22

23

24

25

26

27

28

3

1

## **TABLE OF CONTENTS**

2

**Page**

3    I.     INTRODUCTION .................................................................... 1

4    II.    STATEMENT OF UNCONTROVERTED FACTS ...................... 1

5          A.    Llamas Did Not Stop His Car For Law Enforcement........................ 2

6          B.    Llamas Fled to a Residential Area With a Gun. ................................ 2

7          C.    Llamas Kills Police K-9. .................................................................. 2

8          D.    Llamas Heads Toward River Road With a Gun in His Hand............. 2

9          E.    Llamas Fails to Comply With Verbal Commands............................. 3

10         F.    Events Immediately Leading Up to the Subject Incident. ................. 3

11         G.    Discharged Weapons......................................................................... 4

12         H.    Medical Care Rendered. ................................................................... 4

13         I.     County Policy. .................................................................................. 4

14         J.     Plaintiff S.L. .................................................................................... 4

15         K.    Plaintiff V.L. .................................................................................... 5

16         L.     Campbell. ......................................................................................... 5

17   III.   MOTION FOR SUMMARY JUDGMENT STANDARD ............ 5

18   IV.   THE FORCE AT ISSUE IN THIS ACTION WAS REASONABLE .......... 6

19         A.    Severity of the Crime ....................................................................... 7

20         B.    Immediate Threat ............................................................................. 8

21         C.    Fleeing Suspect/Active Resistance ................................................... 8

22   V.    IMMEDIATE MEDICAL CARE RENDERED .......................... 9

23   VI.   LOSS OF FAMILIAL RELATIONSHIP CLAIM FAILS ............ 10

24   VII.  QUALIFIED IMMUNITY ...................................................... 11

25   VIII. *MONELL* CLAIMS AGAINST THE COUNTY FAIL .............. 12

26   IX.   PLAINTIFFS' STATE LAW CLAIMS FAIL ............................. 13

27         A.    The Battery Claim Fails. .................................................................. 13

28         B.    The Negligence Claim Fails............................................................. 14

i

MANNING | KASS

MK

        C.     The Bane Act Claim Fails. ....................................................... 15

X.     PLAINTIFFS' STANDING ISSUES ................................................ 16

        A.     S.L. Lacks Standing Due to Her Adoption. ......................... 16

        B.     Plaintiffs V.L. and Campbell Lack Standing to Bring Wrongful
               Death Claims. ......................................................................... 17

               1.     V.L. Is Unable To Evidence Standing For Wrongful Death
                      Claim. ........................................................................... 18

               2.     Campbell Lacks Standing Because She Was Not
                      Financially Dependent on Llamas. ............................... 19

        C.     Plaintiffs V.L. and Campbell Lack Standing to Bring
               Survivorship Claims ............................................................... 20

XI.    CONCLUSION ............................................................................... 21

CERTIFICATION PURSUANT TO LOCAL RULE 11-6.2 ................................ 23

**MK** MANNING | KASS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. Superior Court*
    196 Cal.App.4th 71 (2011)..............................................................18

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242, 248 (1986) ...............................................................5

*Archibald v. Cty. of San Bernardino*
    2018 U.S. Dist. LEXIS 171243 (C.D. Cal. Oct. 2, 2018) ...............13

*Barnes v. Felix*
    23-1239 2025 WL 1401083 (U.S. May 15, 2025)............................9

*Brittain v. Hansen*
    451 F.3d 982 (9th Cir. 2006)..........................................................10

*Brown v. Ransweiler*
    171 Cal.App.4th 516 (2009)......................................................14, 15

*Byrd v. Phoenix Police Dep't*
    885 F.3d 639 (9th Cir. 2018)............................................................7

*Carter v. City of Carlsbad*
    799 F. Supp. 2d 1147 (S.D. Cal. 2011) .........................................13

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) .........................................................................6

*Chavez v. Carpenter*
    91 Cal.App.4th 1433
    111 Cal.Rptr.2d 534 (2001)............................................................19

*City of Los Angeles v. Heller*
    475 U.S. 796 (1986) .......................................................................12

*Connick v. Thompson*
    563 U.S. 51 (2011) .........................................................................12

*Corrales v. Impastato*
    650 F. App'x 540 (9th Cir. 2016) .....................................................8

*Cotta v. Cnty. of Kings*
    79 F. Supp. 3d 1148 (E.D. Cal. 2015)............................................21

*Cruz v. City of Anaheim*
    765 F.3d 1076 (9th Cir. 2014)..........................................................8

NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

MANNING | KASS

*District of Columbia v. Wesby*
   583 U.S. 48 (2018) ..................................................................................11

*Eastburn v. Reg'l Fire Prot. Auth.*
   80 P.3d 656 (Cal. 2003).............................................................................15

*Estate of Perez v. City of Orange*
   2019 WL 4228375 (C.D. Cal. May 13, 2019) .........................................18

*Estate of Strickland v. Nevada Cnty.*
   69 F.4th 614 (9th Cir. 2023)........................................................................8

*Foster v. City of Fresno*
   392 F.Supp.2d 1140 (E.D.Cal.2005).........................................................20

*Frary v. Cnty. of Marin*
   81 F. Supp. 3d 811 (N.D. Cal. 2015) ..................................................18, 19

*George v. Morris*
   736 F.3d 829 (9th Cir. 2013)........................................................................8

*Graham v. Connor*
   490 U.S. 386 (1989) ..............................................................................7, 14

*Grant v. McAuliffe*
   41 Cal. 2d 859 (1953) ...............................................................................21

*Hassanati v. Int'l Lease Fin. Corp.*
   2014 WL 5032354 (C.D.Cal. Feb. 18, 2014)..........................................18

*Hayes v. Cnty. of San Diego*
   736 F.3d 1223 (9th Cir. 2013)...................................................................21

*Hayes v. County of San Diego*
   57 Cal. 4th 622 (2013) ........................................................................13, 14

*Hoff v. Vacaville Unified Sch. Dist.*
   968 P.2d 522 (Cal. 1998)...........................................................................15

*Hunter v. Cnty. of Sacramento*
   652 F.3d 1225 (9th Cir.2011).....................................................................12

*In re Raphael P.*
   97 Cal.App.4th 716 (2002) ........................................................................19

*Jason P. v. Daniell S.*
   9 Cal.App.5th 1000 (2017) ........................................................................19

*Kisela v. Hughes*
   584 U.S. 100 (2018) ..................................................................................11

*Lopez v. City of Los Angeles*
   (2011) 196 Cal.App.4th 675.......................................................................15

iv

*Marks v. Lyerla*
    (1991) 1 Cal.App.4th 556.................................................................17

*Martinez v. County of Los Angeles*
    47 Cal. App. 4th 334 (1996).............................................................13

*Matsushita Elec. v. Zenith Radio*
    475 U.S. 574, 576 (1986)...................................................................6

*Mejia v. City of San Bernardino*
    2012 WL 1079341 (C.D. Cal. Mar. 30, 2012) ...................................9

*Miller v. Clark Cnty.*
    340 F.3d 959 (9th Cir. 2003).............................................................9

*Monell v. Department of Soc. Serv.*
    436 U.S. 658 (1978)..............................................................12, 13, 17

*Moore ex rel. Moore v. Cnty. of Kern*
    2007 WL 2802167 (E.D. Cal. Sept. 23, 2007)...............................21

*Moreland v. Las Vegas Metro. Police Dep't*
    159 F.3d 365 (9th Cir.1998)........................................................17, 21

*Mullenix v. Luna*
    577 U.S. 7 (2015) .............................................................................11

*Munoz v. City of Union City*
    120 Cal. App. 4th 1077 (2004).........................................................13

*Munoz v. City of Union City*
    16 Cal. Rptr. 3d 521 (Ct. App. 2004)...............................................15

*Oyenik v. Corizon Health, Inc.*
    696 F. App'x 792 (9th Cir. 2017).....................................................12

*Phraner v. Cote Mart, Inc.*
    55 Cal. App. 4th 166 (1997).......................................................16, 17

*Plumhoff v. Rickard*
    572 U. S. 765 (2014) .........................................................................9

*Porter  v. Osborn*
    546 F.3d 1131 (9th Cir. 2008) ........................................................10

*Reese v. Cty. of Sacramento*
    888 F.3d 1030 (9th Cir. 2018)..........................................................15

*Reynolds v. Cnty. of San Diego*
    858 F. Supp. 1064 (S.D. Cal. 1994) ................................................18

*Rice v. Morehouse*
    989 F.3d 112, 1120 (9th Cir. 2021)....................................................6

v

*Rivera v. Cnty. of Los Angeles*
   745 F.3d 384 (9th Cir. 2014)..............................................................................12

*Romero v. Kitsap County*
   931 F.2d 624 (9th Cir. 1991)..............................................................................11

*S.R Nehad v. Browder*
   929 F.3d 1125 (9th Cir. 2019)..............................................................................7

*Schmidt v. Cnty. of San Diego*
   2023 WL 8812877 (S.D. Cal. Dec. 20, 2023).....................................................19

*Schoeder v. County of San Bernardino*
   2019 U.S. District Lexis 150020 (C.D. Cal. 2019)..............................................6

*Scott v. Harris*
   550 U.S. 372 (2007)............................................................................................6

*Scott v. Henrich*
   39 F.3d 912 (9th Cir. 1994)..............................................................................12

*Shoyoye v. Cnty. of L.A.*
   203 Cal.App.4th 947 (2012)..............................................................................15

*Smith v. City of Hemet*
   394 F.3d 689 (9th Cir. 2005)..............................................................................8

*Tatum v. City & Cnty. of San Francisco*
   441 F.3d 1090 (9th Cir. 2006)............................................................................9

*Tennessee v. Garner*
   471 U.S. 1 (1985)...............................................................................................7

*Trevino v. Gates*
   99 F.3d 911 (9th Cir. 1996)..............................................................................12

*Wheeler v. City of Santa Clara*
   894 F.3d 1046 (9th Cir. 2018)............................................................................17

*White v. Pauly*
   580 U.S. 73 (2017)............................................................................................11

*Wilkinson v. Torres*
   610 F.3d 554 (9th Cir. 2010)............................................................................10

*Zelig v. County of Los Angeles*
   27 Cal.4th 1112 (2007)......................................................................................13

**STATUTES**

C.C.P.
   § 377.11.............................................................................................................18

vi

MANNING | KASS

MK

C.C.P.
      § 377.30 .................................................................................21

C.C.P.
      § 377.32(a) .............................................................................21

C.C.P.
      § 377.60(a) .............................................................................18

Cal. Gov. Code
      § 820.2 ...................................................................................13

Cal. Gov. Code
      § 820.25 .................................................................................13

Cal. Gov. Code
      § 820.6 ...................................................................................13

Cal. Gov. Code
      § 820.8 ...................................................................................13

Cal. Gov. Code
      § 821.8 ...................................................................................13

Cal. Penal Code
      §835a ......................................................................13, 14, 15

California Code of Civil Procedure
      § 377.60 ..........................................................................17, 20

California Probate Code
      § 6451 ..............................................................................16, 17

California Probate Code
      § 6453(a) ...............................................................................18

Family Code
      § 7601(a) ...............................................................................18


**FEDERAL STATUTES**


42 U.S.C.
      § 1983 ..............................................................................18, 21

Fed. R. Civ. P. 56(a) .......................................................................5

Fed. R. Civ. P., 50(a) .....................................................................6

MANNING | KASS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

On April 14, 2023, Johnny Ray Llamas ("Llamas") was on probation and had outstanding felony warrants stemming from serious crimes. Undisputed facts demonstrate that on this day Llamas was armed when he attempted to evade law enforcement. He fled to an area near residential homes. Thereafter, while taking cover near trees and bushes, Llamas killed a police dog with his firearm.

Under the totality of the circumstances, Defendants Sergeant Shawn Hubachek ("Hubachek") and Deputy Jimmie McGuire ("McGuire") believed Llamas to be an imminent threat of death or serious bodily injury. Llamas was instructed to surrender and lay down his weapon on multiple occasions. But, he did not comply. Never letting go of his gun, the events that followed happened in rapid succession, ensuing in a fatal lethal force encounter.

The events arising from this action are emotional. Even so, the undisputed facts[1] establish Defendants County of Riverside, Hubachek, and McGuire did not violate rights under the Constitution or state law as alleged by Plaintiffs S.L., V.L., and Carolyn Campbell (collectively, "Plaintiffs"). Accordingly, Defendants are entitled to summary judgment.

**II.     STATEMENT OF UNCONTROVERTED FACTS**

On April 14, 2023, Riverside County Sheriff's Dispatch advised units, that a suspect named Johnny Llamas was armed and driving a blue Chevy Tahoe (license plate 7BUC580). [UF 1.] Per a 911 call, he was staying at or near 22635 Shaw Court in Perris, California. [UF 1.] This anonymous reporting party understood deputies were looking for Llamas and advised that he was likely carrying a gun. [UF 2.]

Two weeks prior, Llamas ran from law enforcement after officers visited the same address. [UF 3.] On the day of the incident, Llamas was on probation and had

---

[1] *See generally* UF Nos. 1-73.

**NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

1  felony warrants out for his arrest for charges that included child molestation of his

2  niece and armed robbery. [UF 4.]

3      **A.**    **Llamas Did Not Stop His Car For Law Enforcement.**

4      Officers were dispatched to the address with caution Llamas was possibly

5  armed. [UF 5.]  Not far from Shaw Court, Llamas was located, driving westbound

6  towards Highway 74. [UF 6.] Llamas did not stop, so, officers attempted to spike the

7  vehicle.  [UF 6.]  It did not work. Llamas continued on Highway 74, onto River

8  Road, but, officers lost sight of him. [UF 7.]

9      **B.**    **Llamas Fled to a Residential Area With a Gun.**

10      Thereafter, Llamas was seen with a female running near the back side of

11  22305 River Road at about 4:45 pm.  [UF 8.]  A resident reported seeing Llamas

12  flee across her property and believed that he was possibly armed. [UF 9.]  After

13  attempting to hide in a shed, Llamas found a place to hide in the general vicinity of

14  22305 River Road from about 4:50-7 pm. [UF 10.]  During this time, Defendants

15  Hubachek and McGuire attended a tactical briefing by Sgt. McFadden and Deputy

16  Devine regarding the search for Llamas, which included information about Llamas'

17  extensive criminal history, previous contacts with firearms, and his warrants for

18  felony charges of molestation/rape and armed robbery. [UF 11.]

19      **C.**    **Llamas Kills Police K-9.**

20      Thereafter, K-9 Officers, including Deputy Day and his police service dog,

21  Rudy, were searching for and eventually came upon Llamas, hiding in a tree. [UF

22  12.]  At about 7:15 pm, Llamas shot his gun towards K-9 Rudy and other deputies

23  close by. [UF 13.]  Fortunately, no human officers were struck, but the bullet hit and

24  killed Rudy. [UF 13.] Around 7:20 pm, Llamas was seen in some brush with a

25  female and then continued to run. [UF 15.]

26      **D.**    **Llamas Heads Toward River Road With a Gun in His Hand.**

27      Llamas arrived back near 22305 River Road with the gun still in his hand.

28  [UF 16-17.]  Llamas moved the gun to his head, then back down again, looked

2

MK MANNING | KASS

1  around, and repeated these movements as he walked toward the gate. [UF 18-20.]

2  As Llamas crawled, the gun was continuously in his hand. [UF 21.]  Then,

3  Llamas put his left arm in the air and right hand holding the gun. [UF 22.] Llamas

4  was commanded to surrender and drop his weapon. [UF 23.]  He continued on a dirt

5  path toward River road (*adjacent to a residential home*) switching the gun from his

6  left hand to his right hand. [UF 24.]  Once he reached River Road, he put his left

7  arm in the air with the right hand still holding the gun in an upward motion near his

8  head. [UF 25.]

9  **E.      Llamas Fails to Comply With Verbal Commands.**

10  Walsh, Hubachek, and McGuire were positioned to the west of Llamas behind

11  a vehicle for cover when they first observed Llamas heading north on the dirt path.

12  [UF 26.]  Walsh, who was in charge of the overall command of the scene and

13  supervised Hubachek and McGuire, yelled, "drop the gun!" [UF 27-29.]  At this

14  point, Hubachek was aware shots had been fired at someone in the K-9 unit,

15  possibly a dog had been hit. [UF 30.]

16  Walsh, *again*, instructed Llamas to drop his weapon and get on the ground.

17  [UF 31.] Walsh issued the same command for a third time. [UF 32.]  Walsh gave a

18  fourth command for Llamas to drop the gun immediately and to get on the ground.

19  [UF 33.] Llamas never complied. [UF 31-32.]

20  Instead of complying, Llamas turned off River Road moved out of Hubachek

21  and McGuire's visual path, but the helicopter still tracked Llamas and broadcasted

22  his movements while giving commands. [UF 35-36.]

23  **F.      Events Immediately Leading Up to the Subject Incident.**

24  Llamas started to run again, with the gun still in his hand pointed towards his

25  head. [UF 37.]  Llamas moved north, as Walsh, Hubachek, and McGuire moved east

26  to try to cut him off. [UF 38.] Llamas then pointed the gun outward from his body.

27  [UF 38.] A deputy indicated a gun was pointed in their direction. [UF 39.]

28

NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1  Llamas moved towards a known occupied dwelling where McGuire had
2  spoken to two men sitting on the porch attached to that same property earlier that
3  day. [UF 40.] Then, Hubachek and McGuire saw Llamas again in front of them,
4  about 40-50 yards away. [UF 41.]  Llamas turned towards Hubachek and McGuire
5  with the gun oriented towards deputies. [UF 42.]

6  **G.  Discharged Weapons.**

7  At about 7:29 pm, Hubachek and McGuire discharged their weapons due to
8  the threat of Llamas' actions, and Llamas fell to the ground. [UF 43-44.]  Hubachek
9  was about 40 to 50 yards from Llamas when he aimed at the thoracic area of
10  Llamas' body while Llamas was still moving and McGuire aimed at Llamas' torso.
11  [UF 46-47.]  After the first volley, Llamas' face was oriented in McGuire's
12  direction, and he continued to move on the ground, including lifting the gun and
13  holding it in the direction of the deputies. McGuire moved up to where he was about
14  35 to 45 yards away from Llamas and shot a second volley. [UF 48.]  In total,
15  Hubachek shot one volley, McGuire shot two volleys. [UF 44-45.]

16  **H.  Medical Care Rendered.**

17  Afterward, Hubachek, Walsh, and McGuire immediately moved towards
18  Llamas and administered medical care. [UF 49.]  Llamas ultimately succumbed to
19  his injuries. [UF 50.]

20  **I.  County Policy.**

21  The County's policy maintains that a deputy may use deadly force in order to
22  protect themselves and others when he reasonably believes that the person will
23  cause serious bodily injury. [UF 51.] Likewise, the policy provides circumstances
24  for a "fleeing felon" that allows for deadly force instances where that person will
25  cause serious bodily injury. [UF 52.]

26  **J.  Plaintiff S.L.**

27  Plaintiff, S.L. was born on July 8, 2013. [UF 53.] Her biological aunt,
28  Kristina Rose Llamas Leyva, is her legal mother. [UF 54.]  Ms. Leyva, who is

4

1    Llamas' sister, adopted S.L. when she was 10 months old . [UF 54-55.] The rights of
2    S.L.'s  biological parents were terminated, and she has lived with Ms. Leyva ever
3    since. [UF No. 55.]  Llamas never had legal custody of S.L. [UF 56.]  From the time
4    of S.L.'s birth in 2013 to 2020, Ms. Leyva testified Llamas occasionally stayed a
5    few nights for short periods of time, and provided very nominal amounts of money.
6    [UF 57-58.] S.L. does not know the last time she saw Llamas. [UF 59.]

7           **K.**    **Plaintiff V.L.**

8           Plaintiff V.L. was born on August 20, 2011, to Amber Snetsinger. [UF 60.]
9    Ms. Snetsinger testified Llamas is V.L.'s biological father, however, he is not listed
10   on her birth certificate. [UF 60.]  Snetsinger and Llamas were never married. [UF
11   61.] In fact, Llamas never married. [UF 61.]

12          Snetsinger claims she was in a relationship with Llamas at the time she got
13   pregnant with V.L. but it ended because of his incarceration. [UF 62.] Snetsinger
14   never added Llamas to V.L.'s birth certificate and never initiated any legal
15   proceedings with respect to parental rights and visitation, including child support.
16   [UF 63.]  V.L. has never lived with Llamas and only spoke to him a handful times in
17   her life. [UF 64-65.]  V.L. believes she has never seen Llamas in person, but
18   Snetsinger testified that V.L. spent time with him was when she was 11 months old.
19   [UF 66-68.]

20          **L.**    **Campbell.**

21          Plaintiff Carolyn Campbell is the biological mother to Llamas and they
22   sometimes lived together but not at the time of his death. [UF 69.] Plaintiff
23   Campbell testified that Plaintiffs, S.L. and V.L. are Llamas' children. [UF 70.]

24   **III.    MOTION FOR SUMMARY JUDGMENT STANDARD**

25          Summary judgment is proper if the moving party demonstrates "that there is
26   no genuine issue as to any material fact. . . ." Fed. R. Civ. P. 56(a)

27          A fact is material when it affects the outcome of the case. *Anderson v.*
28   *Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In *Celotex Corp. v. Catrett*, 477 U.S.

5

MANNING | KASS

317 (1986), the Supreme Court rejected the contention that the moving party must support its summary judgment motion with evidence proving the non-existence of an essential element of plaintiff's cause of action. Rather, the Court held that "the moving party bears the burden of informing the court of the basis for its motion, and identifying parts of the file which it believes indicated an absence of a general issue of material fact." *Id*. at 323. The burden then shifts to the respondent to set forth affirmative evidence. The non-moving party "must set forth specific facts showing that there is a genuine issue of material fact for trial." *Anderson,* 477 U.S. at 248. The party who bears the burden of proof at trial also bears the burden of producing sufficient evidence in opposition to the summary judgment motion to enable reasonable jurors to find for that party. The standard is the same as that for judgment as a matter of law under Federal Rules of Civil Procedure, Rule 50(a). *Anderson,* 477 U.S. at 249. In opposing a motion for summary judgment, it is insufficient to merely show there is some "metaphysical doubt as to material facts." *Matsushita Elec. v. Zenith Radio,* 475 U.S. 574, 576 (1986).

Importantly, the United States Supreme Court noted in *Scott v. Harris*, 550 U.S. 372, 380-81 (2007), where a video of an arrest exists in an excessive force claim and the plaintiff submits declarations which are diametrically opposed to the evidence contained in the video, the Court should not conclude that a genuine issue of fact exists based on a patently "visible fiction" and, instead, should view the facts in the light depicted in the videotape. Thus, if one party's version of events is clearly contradicted by video evidence of the incident, that party's version is not credited. *Rice v. Morehouse*, 989 F.3d 112, 1120 (9th Cir. 2021) citing *Schoeder v. County of San Bernardino*, 2019 U.S. District Lexis 150020, *6, n.4 (C.D. Cal. 2019).

## IV.    <u>THE FORCE AT ISSUE IN THIS ACTION WAS REASONABLE</u>

The pertinent question under the Fourth Amendment is whether the use of force was "objectively reasonable in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Graham v.*

6

*Connor*, 490 U.S. 386, 397 (1989). As such, excessive force cases, examine whether an officer's actions are objectively reasonable given the totality of the circumstances. *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018). This requires "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. Thus, the *Graham* Court set forth a non-exhaustive list of factors to be considered in evaluating whether the force used to effect a particular seizure is reasonable, set forth below. *Id*. at 394-95.

### A.    Severity of the Crime

Llamas posed a threat of serious harm to the officers and the public. The Ninth Circuit has applied the "severity of the crime at issue," in two ways. *See S.R Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019) First, "a particular use of force would be more reasonable, all other things being equal, when applied against a felony suspect than when applied against a person suspected of only a misdemeanor." *Id*. Second, the "severity of the crime" has been used as a proxy for the danger a suspect poses at the time force is applied. *Id*.

Llamas was on probation and law enforcement had been looking for him, as confirmed by the 911 call and police dispatch. [UF 1-4.] Most notably, he had felony warrants out for his arrest related to serious crimes, including the molestation of his niece and armed robbery. [4, 11.] Further, he was known to be armed. [1-2, 5, 9, 11.] Hubachek and McGuire had knowledge of this prior to their encounter. [11.] Further, under the second approach, the fact that Llamas had displayed a firearm when confronting law enforcement further supports a finding that the use of force

7

1  was reasonable. [16-48.] Thus, given the severity of the type of crime and the

2  danger Llamas posed to others, the force was reasonable.

3      **B.**    <u>**Immediate Threat**</u>

4      The "most important single element of the three specified factors: whether the

5  suspect poses an immediate threat to the safety of the officers or others." *Smith v.*

6  *City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005).

7      Here, Llamas posed an "***immediate threat***" to the safety of the officers or

8  others. *See Estate of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023)

9  (emphasis added). "If the person is armed—***or reasonably suspected of being***

10 ***armed***—a furtive movement, harrowing gesture, or serious verbal threat might

11 create an immediate threat." *Strickland*, 69 F.4th at 620*, see also Cruz v. City of*

12 *Anaheim*, 765 F.3d 1076, 1079 n.2 (9th Cir. 2014); c.f. C*orrales v. Impastato*, 650

13 F. App'x 540, 541-42 (9th Cir. 2016) (holding no excessive force where the officer

14 shot, without warning, the suspect as he rushed towards the officer "while pulling

15 his previously concealed hand from his waistband").

16     Evidence, including video footage, confirms Llamas was armed with a gun

17 throughout his encounter with law enforcement on the date of the incident. [UF 1-

18 48.] By the time Hubachek and McGuire observed Llamas, they had knowledge of

19 his extensive violent criminal history. [1-11.] And, their unit had knowledge that the

20 adjacent residences were occupied dwellings. [9, 40.] The most dispositive fact is

21 that Llamas oriented the gun towards deputies. [38-48.]

22     "When an individual points his gun in the officers' direction, they are

23 undoubtedly entitled to use deadly force." *George v. Morris*, 736 F.3d 829, 838 (9th

24 Cir. 2013) (citations omitted.) Remarkably, reasonableness does ***not*** require officers

25 "to delay their fire until a suspect turns his weapon on them." *Strickland*, 69 F.4th

26 at 620. Accordingly, the force was reasonable to stop the immediate threat.

27     **C.**    <u>**Fleeing Suspect/Active Resistance**</u>

28     The Ninth Circuit has held that "hiding" from officers can constitute active

MANNING | KASS

resistance. *Miller v. Clark Cnty.*, 340 F.3d 959, 965-66 (9th Cir. 2003) ("Although Miller had paused while hiding in the woods at the time of his arrest, Miller was still evading arrest by flight."). Here, Llamas tried hiding to evade arrest. [UF 2, 6-17.] First, he tried to hide in at or near the residential property where the incident eventually occurred, then he tried hiding in a tree. [8-10, 12.] When K-9 Officers came upon him, he fired his weapon and killed a Police K-9 with officers nearby and then hid again. [12-15.] At the point Hubachek first observed Llamas, he was already aware that shots had been fired and that someone in the K-9 unit, possibly a dog, had been hit. [30] Lt. Walsh instructed Llamas to lower his weapon at least four times, but he did not comply. [29, 31-33]

Under the totality of the circumstances, the evidence firmly supports that the force here was reasonable. The "totality of the circumstances" inquiry has no time limit. *See Barnes v. Felix*, 23-1239, 2025 WL 1401083 (U.S. May 15, 2025). Earlier facts and circumstances impact how a reasonable officer would have understood and responded to later ones. *See id*., see also *Plumhoff v. Rickard*, 572 U. S. 765 (2014).

## V.    <u>IMMEDIATE MEDICAL CARE RENDERED</u>

The Ninth Circuit analyzes claims regarding deficient medical care during and immediately following an arrest under the Fourth Amendment. S*ee Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006). Law enforcement officers are required to provide objectively reasonable post-arrest care to an apprehended suspect. *Mejia v. City of San Bernardino*, 2012 WL 1079341, at *5 n.12 (C.D. Cal. Mar. 30, 2012). An officer has acted reasonably if he promptly summons the necessary medical help, even if the officer does not themselves administer CPR. *See Tatum*, 441 F.3d at 1099.

Here, the videos confirm that the officers requested medical care and that Llamas received prompt medical care. [UF. 49-50.] Thus, there is no cognizable claim that Llamas was denied medical care and the deputies are entitled to summary judgment.

# VI.    <u>LOSS OF FAMILIAL RELATIONSHIP CLAIM FAILS</u>

To prevail on a Fourteenth Amendment substantive due process claim, the plaintiff must show that: (1) the government deprived the plaintiff of "life, liberty, or property;" and (2) the government's behavior shocks the conscience. *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006); *Porter  v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Official conduct that "shocks the conscience" in depriving children or parents of that interest in their family relationships is cognizable as a violation of due process. *Porter*, 546 F.3d at 1137.

In determining whether an officer's force shocks the conscience, the court first asks whether the circumstances of the case allowed the officer to have actual deliberation. *Wilkinson v. Torres*, 610 F.3d 554 (9th Cir. 2010). In such fast-paced situations, the Court applies the purpose to harm standard, where a plaintiff must show an officer's goal was to cause harm unrelated to a legitimate law enforcement objective. *Porter*, 546 F.3d at 1140. A law enforcement officer's "snap judgment" in an escalating situation may only be found to shock the conscience if he acts with a purpose to harm "unrelated to legitimate law enforcement objectives." *Porter*, 546 F.3d at 1140. The court noted that "deliberation" should not be interpreted in the narrow, technical sense, reasoning that the Supreme Court had rejected the deliberate indifference standard even in cases where an officer giving chase could have deliberated while pursuing the suspect. *Wilkinson*, 610 F.3d at 554 (*citing Porter*, 546 F.3d at 1139-40.)

Here, there is no evidence to suggest Hubachek and McGuire had enough time for actual deliberation as Llamas fled through a residential neighborhood, armed with a gun, after shooting and killing a Police K-9, and then pointed the gun toward officers. There is also no evidence of a purpose to harm, such that their conduct "shocks the conscience."  Rather, the evidence shows Llamas was uncooperative and unpredictable and deputies had to react to an escalating situation.

Thus, Plaintiffs' claim under this cause of action fails.

10

# VII.  QUALIFIED IMMUNITY

Even if Hubachek and McGuire's actions arose to a cognizable constitutional violation, they are both entitled to qualified immunity on the federal claims.

An officer is entitled to qualified immunity when at the time of the use of force incident there was no prior case precedent with substantially analogous facts to put the officer on notice that his conduct violated the suspect's clearly established constitutional or statutory rights. *White v. Pauly,* 580 U.S. 73, 79 (2017).  Although a case directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal quotations omitted).  "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Mullenix v. Luna,* 577 U.S. 7, 12 (2015) (internal quotations and citations omitted).  It is plaintiffs' burden to establish that the right in question was clearly established at the time of the incident. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

"Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity **unless** existing precedent **squarely governs** the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (*per curiam*).  (emphasis added).

Here, Plaintiffs cannot show that at the time of the conduct, "the law was sufficiently clear that every reasonable official would understand that [the officers' conduct was] unlawful." *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).  Plaintiffs cannot point to any "**settled law**" that would have **clearly defined** with the **necessary specificity** that the use of force under these circumstances was unreasonable "**beyond debate**." *See id.* at 63–64. (emphasis added). There was no substantially analogous precedent placing Hubachek or McGuire on notice that their actions in responding to the immediate threat posed by Llamas violated the

1    constitution.  Therefore, they are entitled to qualified immunity.

2    **VIII.  *MONELL* CLAIMS AGAINST THE COUNTY FAIL**

3         Plaintiffs' claims for *Monell* liability fail because in the absence of an underlying

4    constitutional violation by its deputy, there can be no *Monell* liability against the County

5    of Riverside.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam);

6    *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994); *see also Trevino v. Gates*, 99 F.3d

7    911, 918 (9th Cir. 1996) (stating the requirements to establish *Monell* liability).

8         Under this claim, Plaintiffs must prove that action pursuant to official

9    municipal policy caused their injury. *Monell*, 436 U.S. at 691. "The official policy

10   requirement was intended to distinguish acts of the municipality from acts of

11   employees of the municipality, and thereby make clear that municipal liability is

12   limited to action for which the municipality is actually responsible." *Pembaur v.*

13   *City of Cincinnati,* 475 U.S. 469, 479-480 (1986). "[A] plaintiff seeking to impose

14   liability on a municipality under § 1983 [must] identify a municipal policy or

15   custom that caused the plaintiff's injury." *Hunter v. Cnty. of Sacramento*, 652 F.3d

16   1225, 1232–33 (9th Cir.2011) *see also Rivera v. Cnty. of Los Angeles*, 745 F.3d 384,

17   389 (9th Cir. 2014)

18        Assuming a constitutional violation occurred, there is no evidence to establish a

19   policy, practice, or custom or a failure to train caused a violation of plaintiffs' civil

20   rights.  *Monell v. Department of Soc. Serv*., 436 U.S. 658, 691 (1978).  The Ninth

21   Circuit has held that a single incident will not suffice to show a policy.  *See Oyenik v.*

22   *Corizon Health, Inc.,* 696 F. App'x 792, 794 (9th Cir. 2017) (noting that "one or two

23   incidents are insufficient to establish a custom or policy"). And, in order to

24   demonstrate a constitutional failure to train, Plaintiffs must show a pattern of similar

25   constitutional violations by untrained employees.  *Connick v. Thompson*, 563 U.S. 51,

26   62 (2011).

27        There is no official policy or lack of training which caused Plaintiffs' injury.

28   Further, Hubachek and McGuire acted with reasonable force under the totality of the

12

1   circumstances.  Thus, Plaintiffs' claims for *Monell* liability fail.

2   **IX.    PLAINTIFFS' STATE LAW CLAIMS FAIL**

3           Plaintiffs' state law claims for battery and negligence claim based on an

4   excessive force theory are measured under the reasonableness standard of the Fourth

5   Amendment. *Carter v. City of Carlsbad*, 799 F. Supp. 2d 1147, 1164 (S.D. Cal.

6   2011); *see Hayes v. County of San Diego*, 57 Cal. 4th 622, 637-39 (2013) (adopting

7   *Graham* reasonableness standard for seizure-related negligence claims against

8   officers but clarifying that scope of liability may extend to pre-seizure conduct

9   under certain circumstances); *Archibald v. Cty. of San Bernardino*, 2018 U.S. Dist.

10  LEXIS 171243, at *22 (C.D. Cal. Oct. 2, 2018) (acknowledging that Plaintiffs'

11  battery, negligence, and Bane Act claims are governed by the same inquiry that

12  governs their excessive force claims); *Martinez v. County of Los Angeles*, 47 Cal.

13  App. 4th 334, 349-50 (1996); *Munoz v. City of Union City*, 120 Cal. App. 4th 1077,

14  1101-03 (2004) (holding that as to a state-law battery claim, whether the force was

15  unreasonable must be decided under the Fourth Amendment reasonableness

16  standard).

17          Further, a police officer in California may use reasonable force to make an

18  arrest, prevent escape or overcome resistance, and need not desist in the face of

19  resistance.  Cal. Penal Code §835a. Officers are immune for their pre-seizure

20  tactical decisions because "[e]xcept as otherwise provided by statute" California

21  bars liability for "injury resulting from … the exercise of the discretion vested in

22  him, whether or not such discretion be abused." Cal. Gov. Code § 820.2; *see* Cal.

23  Gov. Code §§ 820.25, 820.6, 820.8, 821.8; *Zelig v. County of Los Angeles,* 27

24  Cal.4th 1112, 1118-1130 (2007).

25          **A.    The Battery Claim Fails.**

26          An officer is not similarly situated to the ordinary battery defendant and need

27  not be treated the same, rather, he is entitled to use even greater force than might be

28  in the same circumstances required for self-defense.  *Brown v. Ransweiler*, 171

13

MANNING | KASS

Cal.App.4th 516, 526-28 (2009). Further, an officer is not liable for battery if his actions were objectively reasonable based on the facts and circumstances confronting the officer, a test highly deferential to the officer's need to protect himself and others. *Brown*, 171 Cal. App. 4th at 527. Like the Fourth Amendment analysis, the calculation of the amount of force requires a trier of fact to recognize that officers are often forced to make split-second judgments, in tense circumstances, concerning the amount of force required. *Id*. at 528.

Here, Hubachek and McGuire's use of force was objectively reasonable under *Graham*. Therefore, Defendants are entitled to judgment on plaintiffs' redundant battery claim.

### B.    The Negligence Claim Fails.

"[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego*, 57 Cal.4th 622, 629 (2013).

Importantly, "[a] peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested," and the "officer [shall not] be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance." Cal. Penal Code § 835(a).

The California Supreme Court held that "[t]he reasonableness of an officer's conduct is determined in light of the totality of circumstances," including "the preshooting conduct of the officers" involved in the shooting incident. *Hayes*, 57 Cal.4th at 629. As long as an officer's conduct falls within the range of conduct that is reasonable, there is no requirement that he choose the most reasonable action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, to avoid liability for negligence. *Id*. at 632. Officers have a degree of discretion as to how they choose

14

1    to address a particular situation.  *Id.* This standard "reflects deference to the split-

2    second decisions of an officer and recognizes that, unlike private citizens, officers

3    may use deadly force." *Lopez v. City of Los Angeles* (2011) 196 Cal.App.4th 675,

4    685.) "What constitutes as 'reasonable' action may seem quite different to someone

5    facing a possible assailant than to someone analyzing the question at leisure. *Brown,*

6    171 Cal.App.4th at 528; see also Pen. Code, § 835a, subd. (a)(4).

7         Further, California Government Code section 815.2 "makes a public entity

8    vicariously liable for its employee's negligent acts or omissions within the scope of

9    employment." *Eastburn v. Reg'l Fire Prot. Auth.*, 80 P.3d 656, 658 (Cal. 2003); *Hoff

10   v. Vacaville Unified Sch. Dist.*, 968 P.2d 522, 526 (Cal. 1998). However, "liability

11   of the employer only attaches if and when it is adjudged that the employee was

12   negligent," and, although "public entities always act through individuals, that does

13   not convert a claim for direct negligence into one based on vicarious liability."

14   *Munoz v. City of Union City*, 16 Cal. Rptr. 3d 521, 549–50 (Ct. App. 2004)

15   (disapproved of on other grounds).

16        Here, Hubachek and McGuire's use of force was objectively reasonable and

17   Defendants are entitled to judgment on plaintiffs' state law claims for negligence.

18        **C.     The Bane Act Claim Fails.**

19        California's Bane Act allows a claim for violation of a plaintiff's state or

20   federal civil rights when the violation is achieved through "threats, intimidation, or

21   coercion." Cal. Civ. Code § 52.1. Plaintiff must show coercion independent from the

22   coercion inherent in the violation of the constitutional right.  *Shoyoye v. Cnty. of

23   L.A.*, 203 Cal.App.4th 947, 959-60 (2012).  Plaintiffs must prove the officer had a

24   specific intent to violate decedent's right to be free from unreasonable seizures.  *See

25   Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018).  "The Bane

26   Act imposes an additional requirement beyond a finding of a constitutional

27   violation." *Reese*, 888 F.3d at 1043. A plaintiff must show that an officer had a

28   "specific intent to violate the arrestee's right to freedom from unreasonable seizure."

15

MANNING | KASS

1  *Id.*

2      Here, there is no evidence to establish that Defendants interfered with

3  Plaintiffs' legal rights by the use of threats, intimidation, or coercion. Specifically,

4  Plaintiffs have failed to prove coercion that is *independent* from that of which is

5  inherent in the Fourth Amendment claim. As such, Plaintiffs cannot meet their

6  burden and this claim must be dismissed.

7  **X.    PLAINTIFFS' STANDING ISSUES**

8      Each Plaintiff has an issue with standing that bars some, if not all, of their

9  claims.

10      **A.    S.L. Lacks Standing Due to Her Adoption.**

11      California Probate Code section 6451 states: "(a) An adoption severs the

12  relationship of parent and child between an adopted person and a natural parent of

13  the adopted person…" The statute provides a limited exception but requires both of

14  the following to be satisfied:

15  (1) The natural parent and the adopted person lived together at any time

16  as parent and child, or the natural parent was married to or cohabiting
    with the other natural parent at the time the person was conceived and

17  died before the person's birth; **and**

18  (2) The adoption was by the spouse of either of the natural parents or
    after the death of either of the natural parents.

19      The California Court of Appeal explained "the statutory right to bring a

20  wrongful death action under section 377.60 [] is grounded in the right to inherit

21  from the decedent. Thus, whether an adopted child is considered a child of her

22  biological parent for purposes of intestate succession is highly relevant to the

23  definition of children in section 377.60." *Phraner v. Cote Mart, Inc.*, 55 Cal. App.

24  4th 166, 170 (1997) (quotations omitted.) ***As a result, an adopted child may not***

25  ***bring a Wrongful Death Claim as a successor-in-interest or personal***

26  ***representative, unless the limited exceptions apply.***

27      S.L. was born on July 8, 2013, and was adopted at eleven months old. [UF

28  53-55.] Llamas never had legal custody of S.L. [UF 55.] At adoption, the rights of

16

her biological parents had already been terminated. [UF 55-57.] Accordingly, her adoption took place well before the subject incident and the parent-child relationship had long been severed.

Here, S.L. does not fall into the exception as her adoptive mother is her biological paternal aunt. [UF 54-56.] S.L. was adopted prior to Llamas' death. Thus exception cannot be met. If the plaintiff does not fall into the exception detailed in 6451(a)(1) -(a)(2), it does not matter if a relationship was maintained with the biological parent after adoption. *See Phraner,* 55 Cal. App. 4th, at 170. Thus, all eight causes of action brought by S.L. as a successor-in-interest or individual capacity for wrongful death claims must be dismissed.

As with wrongful death suits, adoption severs parent-child relationships for purposes of intestate succession in survivorship claims. Cal. Prob. Code § 6451. *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1052-1055. (9th Cir. 2018) (The Ninth Circuit held that plaintiff lacked standing to bring Fourteenth Amendment substantive due process claim for deprivation of his right to a familial relationship with his biological mother, and a related *Monell* claim for supervisory liability.)

## B. Plaintiffs V.L. and Campbell Lack Standing to Bring Wrongful Death Claims.

Standing to sue for wrongful death is governed by California Code of Civil Procedure § 377.60, which authorizes causes of action "to be brought by decedent's personal representative 'or' any of a defined list of persons that includes a decedent's spouse, children, or heirs." *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 370 (9th Cir.1998), as amended (Nov. 24, 1998).

"The category of persons eligible to bring wrongful death actions is strictly construed." *Marks v. Lyerla* (1991) 1 Cal.App.4th 556, 560. "[A] personal representative is by definition a court-appointed executor or administrator of an estate, not merely an heir, ... and ... a personal representative must be a person empowered by law to administer the decedent's estate." *Hassanati v. Int'l Lease Fin.*

17

1    *Corp.*, 2014 WL 5032354, at *16 (C.D.Cal. Feb. 18, 2014)  Heirs, or "successors-in-

2    interest" are defined as beneficiaries of the decedent's estate. C.C.P. § 377.11. As

3    such personal representative *or* a successor in interest may bring an action for

4    wrongful death, but not both. This is because personal representatives may only

5    bring wrongful death claims on behalf of heirs or by specified heirs. *See Frary v.*

6    *Cnty. of Marin*, 81 F. Supp. 3d 811, 844 (N.D. Cal. 2015), *see also Adams v.*

7    *Superior Court*, 196 Cal.App.4th 71, 77 (2011).

8         This is applicable to all causes of action delineated in the operative Complaint

9    as "state wrongful death statutes have been borrowed to supplement § 1983 in the

10   general area of wrongful death actions." *See Reynolds v. Cnty. of San Diego*, 858 F.

11   Supp. 1064, 1069 (S.D. Cal. 1994), aff'd in part, remanded in part, 84 F.3d 1162

12   (9th Cir. 1996) (internal citations omitted.) If plaintiff lacks standing to bring a

13   wrongful death claim under § 377.60(a), that plaintiff also lacks standing to bring a

14   claim under 42 U.S.C. § 1983. *Id.*

15         **1.    V.L. Is Unable To Evidence Standing For Wrongful Death**

16              **Claim.**

17         V.L. cannot satisfy standing requirements under § 377.60 as she cannot

18   evidence a parent-child relationship under the laws of intestate succession. Thus, her

19   wrongful death causes of action must fail. *Estate of Perez v. City of Orange*, 2019

20   WL 4228375, at *3 (C.D. Cal. May 13, 2019) (granting summary judgment on

21   substantive due process and wrongful death claims where plaintiff failed to provide

22   competent evidence indicating she was Decedent's surviving child.)

23         Pursuant to California Probate Code § 6453(a), "a natural parent and child

24   relationship is established where the relationship is presumed and not rebutted

25   pursuant to the Uniform Parentage Act," commencing with Section 7600 of the

26   Family Code. As *Schmidt v. County of San Diego* simply put:

27         Under Family Code § 7601(a), a natural parent means a nonadoptive
           parent established under this part, whether biologically related to the
28         child or not. Section 7611(d),..then provides that a person is presumed a

                                          18

MANNING | KASS

natural parent of a child if the presumed parent receives the child into their home and openly holds out the child as their natural child.

*Schmidt v. Cnty. of San Diego*, 2023 WL 8812877, at *2 (S.D. Cal. Dec. 20, 2023)

Notably, Llamas' name was never on V.L.'s birth certificate. [UF 60-63.] Although her mother testified to an alleged relationship with Llamas at the time of her pregnancy with V.L., she was not married to him. [UF 61-62.] V.L.'s mother also failed to initiate or engage in any legal proceedings with Llamas concerning his parental rights for V.L during Llamas' lifetime. [UF 63.]

Further, V.L.'s mother made no effort to add Llamas to the certificate, during or after incarceration. *See also In re Raphael P.*, 97 Cal.App.4th 716, 738 (2002) ( an unmarried man's name on the child's birth certificate is prima facie proof that he signed a voluntary declaration of paternity.)

California cases evaluating whether a person is the presumed natural parent of a child under section 7611(d) apply the following standard: "receipt of the child into the home must be sufficiently unambiguous as to constitute a clear declaration regarding the nature of the relationship, but it need not be for any specific duration." *Schmidt*, 2023 WL 8812877, at *2 (*quoting Jason P. v. Daniell S.*, 9 Cal.App.5th 1000, 1022 (2017).). V.L. never lived with Llamas and does not recall meeting him ever. [UF 66.] As such, the nature of the relationship with Llamas and V.L. is not clear and unambiguous. Thus, V.L.'s claims as a successor-in-interest or individual capacity for wrongful death are subject to summary judgment.

## 2. Campbell Lacks Standing Because She Was Not Financially Dependent on Llamas.

Campbell may only assert a wrongful death claim if Llamas did not have children or if she was financially dependent on the Decedent. Where a decedent leaves issue, "parents would not be [] heirs at all and therefore not entitled to maintain [a wrongful death] action at all." *Chavez v. Carpenter*, 91 Cal.App.4th 1433, 1440, 111 Cal.Rptr.2d 534 (2001) (citations omitted). *See also Frary*, 81 F.

19

Supp. 3d at 843)(granting summary judgement on negligence claim brought by parent of deceased because of the presence of heirs to decedent in the action.) However, "[r]egardless of their status as heirs, parents may sue for the wrongful death of their child 'if they were dependent on the decedent.' " *Id*. at 1445, 111 Cal.Rptr.2d 534 (quoting C.C.P § 377.60(b)); *see Foster v. City of Fresno*, 392 F.Supp.2d 1140, 1146 (E.D.Cal.2005). "Dependence refers to financial rather than emotional dependency ... [and] a parent must show that they were actually dependent, to some extent, upon the decedent for the necessaries of life." *Foster*, 392 F.Supp.2d at 1146; *see Chavez*, 91 Cal.App.4th at 1445, 111 Cal.Rptr.2d 534.

Here, Campbell predicates her standing to bring this action as the "natural mother" of the decedent for "wrongful death damages." Campbell has not plead this cause of action as a successor-in-interest but rather, as an individual. As such § 377.60 only permits Campbell the ability to bring her causes of action if Decedent had no children (heirs) or if she was financially dependent on Decedent. None of the these apply.

It is undisputed Campbell was not financially dependent on Llamas. [UF 69.] And, the operative complaint alleges Llamas had two issues: S.L. and V.L.. This creates a legal conundrum. If the court determines S.L. or V.L. have standing, Campbell would have to bring suit as a personal representative of the deceased. But, she could only do so on behalf of S.L. or V.L. Alternatively, should the court accept Defendants argument that both S.L. and V.L. lack standing, Campbell's wrongful death claim may survive under the current laws of California intestate succession. Accordingly, on the face of the complaint, the third through eighth causes of action brought by Campbell must be dismissed.

## C.    Plaintiffs V.L. and Campbell Lack Standing to Bring Survivorship Claims.

Unlike a wrongful death claim, a survival claim is not a new cause of action that vests in heirs after the death of the decedent. *See Moore ex rel. Moore v. Cnty.*

20

1    *of Kern*, 2007 WL 2802167, at *6 (E.D. Cal. Sept. 23, 2007) (*citing Grant v.*

2    *McAuliffe*, 41 Cal. 2d 859, 864, 264 P. 2d 944 (1953)).

3         Further, § 377.30 provides that a survival action can be maintained by the

4    decedent's "personal representative" or "successor in interest." Moreover, survival

5    actions pursuant to 42 U.S.C. § 1983 are permitted if authorized by the applicable

6    state law. *Moreland*, 159 F.3d at 369-370. The party seeking to bring a survival

7    action bears the burden of demonstrating that a particular state's law authorizes a

8    survival action and that the plaintiff meets that state's requirements for bringing a

9    survival action." *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1228–29 (9th Cir.

10   2013) A successor-in-interest who "seeks to commence an action or proceeding" on

11   behalf of a decedent "shall execute and file an affidavit" that conforms with the

12   enumerated requirements of § 377.32(a). *Cotta v. Cnty. of Kings*, 79 F. Supp. 3d

13   1148, 1159 (E.D. Cal. 2015), aff'd in part, rev'd in part, 686 Fed. Appx. 467 (9th

14   Cir. 2017).

15        However, Campbell predicates her standing only on an individual capacity,

16   not survivorship. Should the court determine that Campbell has adequately plead a

17   survivor claim at any point, she failed to file the required affidavit. As for V.L., as

18   stated in the argument concerning her wrongful death standing, V.L. also lacks

19   evidence that she is a successor in interest or a personal representative.

20   **XI.   CONCLUSION**

21        Defendants' Motion for Summary Judgment establishes that each claim fails

22   as a matter of law. Thus summary judgment is warranted or in the alternative, partial

23   summary judgment should be granted.

24

25

26

27

28

**NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

1  DATED:  May 16, 2025                    **MANNING & KASS**
2                                           **ELLROD, RAMIREZ, TRESTER LLP**
3
4                                          By:      /s/ Kayleigh Andersen
5                                              Kayleigh Andersen
6                                              Attorneys for Defendants, COUNTY OF
                                               RIVERSIDE, et al.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT;**
**MEMORANDUM OF POINTS AND AUTHORITIES**

1    ## CERTIFICATION PURSUANT TO LOCAL RULE 11-6.2

2    The undersigned, counsel of record for Defendants, certifies that this brief

3    contains 6,999 words, which complies with the Court's word limit of L.R. 11-6.1.

4    DATED:  May 16, 2025                    **MANNING & KASS**

5                                            **ELLROD, RAMIREZ, TRESTER LLP**

6

7                                            By:    _____/s/ Kayleigh Andersen_____

8                                                   Kayleigh Andersen

9                                                   Attorneys for Defendants, COUNTY OF
                                                   RIVERSIDE, et al.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

MANNING | KASS