Eugene P. Ramirez (State Bar No. 134865)
 *eugene.ramirez@manningkass.com*
Lynn Carpenter (State Bar No. 310011)
 *lynn.carpenter@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
 *kayleigh.andersen@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, COUNTY OF RIVERSIDE, SHAWN HUBACHEK, and JIMMIE MCGUIRE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.L. a minor by and through the Guardian Ad Litem Kristine Llamas-Leyva, individually and as successor-in-interest to JOHNNY RAY LLAMAS, deceased; V.L., by and through the Guardian Ad Litem Amber Sietsinger, individually and as successor-in-interest to JOHNNY-RAY LLAMAS deceased; and CAROLYN CAMPBELL, individually,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF RIVERSIDE; and DOES 1¬10, inclusive,<br><br>Defendant. | Case No.: 5:24-cv-00249-CAS(SPx)<br>Hon. Christina A. Snyder<br><br>**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>*Filed concurrently with*<br>*1. Notice of Motion;*<br>*2. Proposed Judgment;*<br>*3. Declaration of Kayleigh Andersen*<br><br>Date:   Monday, June 23, 2025<br>Time:   10:00 am<br>Crtrm.: Courtroom 8D<br><br><br>*Action Filed:     02/01/2024* |

1

Case No. 5:24-cv-00249-CAS(SPx)

**STATEMENT OF UNCONTROVERTED FACTS**

**TO THIS HONORABLE COURT AND PLAINTIFF AND HER COUNSEL OF RECORD:**

Pursuant to Civil Local Rule 56-1 and the Court's Standing Order, Defendants submit their Statement of Uncontroverted Facts in support of their Motion for Summary Judgment.

| No. | Defendants' Uncontroverted Facts. | Supporting Evidence |
|---|---|---|
| 1 | On April 14, 2023, ("subject incident") Riverside County Sheriffs Dispatch advised the Northern Perris County Unit, that a suspect named Johnny Llamas ("Llamas") was armed and driving a blue Chevy Tahoe (license plate 7BUC580). Per a 911 call, he was known to be staying at or near 22635 Shaw Court in Perris, California. | Ex. 2 (00:00-02:53). <br> Ex. 3, at 3:1-6:5. <br> Ex. 4 (00:00-00:59). <br> Ex. 5, at 2:1-4:6 |
| 2 | The 911 call came from a reporting party who wished to remain anonymous. This person understood law enforcement was looking for Llamas and advised that he was likely carrying a gun. | Ex. 2 (00:00-02:53). <br> Ex. 3, at 3:1-6:5. |
| 3 | Two weeks prior, Llamas ran from law enforcement after officers visited the same Shaw Court address in relation to stolen property. | Ex. 2 (00:00-02:53). <br> Ex. 3, at 3:1-6:5. <br> Ex. 4 (01:52-04:33). <br> Ex. 5, at 3:11-20-5:18. |
| 4 | On the day of the subject incident, Llamas was on probation and had felony warrants out for his arrest for charges that included child molestation and armed robbery. The child was his thirteen-year-old niece. | Ex. 13 (01:51-04:20) <br> Ex. 14, at 4:21-8:6. <br> Ex. 17, at 17:7-19. <br> Ex. 21, at 43:23-44:2. <br> Ex. 22 at 129:4-130:3. |
| 5 | Officers were dispatched, including the Star 9 helicopter, to the Shaw address and cautioned that Llamas was known to carry weapons. | Ex. 5, at 2:1-4:6. |
| 6 | Not far from Shaw Court, officers located Llamas driving the described vehicle heading westbound towards Highway 74. Llamas did not stop for law enforcement. Therefore, officers attempted spikes in | Ex. 4 (07:00-08:00). <br> Ex. 5, 7:1-8:25. |

| | | |
|---|---|---|
| | his vehicle's path. | |
| 7 | Llamas continued on Highway 74, onto River Road, However, officers on the ground lost sight of him near Robert Street. | Ex. 4 (08:01-11:07).<br><br>Ex. 5, 7:16-9:18. |
| 8 | Thereafter, Officer Wheeler reported that Llamas was seen with a female running near the back side of 22305 River Road at about 4:45 pm. | Ex. 12, at 1-2, 14. |
| 9 | A reporting party, an elderly woman, who lived on River Road spoke directly to officers on the scene. This resident described seeing a male matching Llamas' description with a female. They were fleeing across the resident's property and believed that he was possibly armed. | Ex. 22. at 130:4-133:3 |
| 10 | After attempting to hide in a shed, Llamas and the female found a place to hide in the general vicinity off the River Road address from about 4:50 pm to about 7 pm. | Ex. 12, at 1-5, |
| 11 | During this time period, Sgt. McFadden (leader of fugitive apprehension squad) and Deputy Devine (case agent) led a tactical briefing prior to the search of property commenced. <u>Sgt. Hubachek and Deputy McGuire, with the County of Riverside, were present during this briefing.</u> This discussion included topics of Llamas' extensive criminal history which included previous contacts with firearms and that Llamas was wanted for either rape or child molestation or both. He was actively being pursued for those crimes. | Ex. 22, at 113:25-116:8, 129:4-130:3<br><br>Ex. 21, at 43:23-44:2. |
| 12 | Thereafter, K-9 Officers, including Deputy Day and his police service dog, Rudy, came upon Llamas, hiding in a tree, | Ex. 10, (01:24:00-01:31:25)<br><br>Ex. 11, at 7:2-25.<br><br>Ex. 12, at 5.<br><br>Ex. 20, at 25:1-7 |
| 13 | At about 7:15 pm, Llamas shot his gun towards K-9 Rudy and other deputies close by. No human officers were struck by that bullet. However, Llamas killed police service dog, Rudy, with that gunshot. | Ex. 10, (01:25:00-01:34:29)<br><br>Ex. 11, at 7:2-25, 8:6-13<br><br>Ex. 12, p. 5<br><br>Ex. 20, at 22:20-23:14, 27:1-15. |
| <u>14</u> | <u>At about 7:20 pm, Llamas was seen hunkering down</u> | <u>Ex. 1, (39:32-44:00),</u> |

| | | |
|---|---|---|
| | in some brush in the field with a female. | Ex.12, at 5. |
| 15 | The two exited the brush. Then ran. | Ex. 1, (44:03-44:40). Ex. 12, at 5. |
| 16 | Llamas ran ahead of the female with a gun in his left hand, arriving back near 22305 River Road. | Ex. 1, (44:40-44:57). Ex.12, at 5. |
| 17 | As Llamas walked down the dirt road, gun still in his hand, he headed towards River Road, | Ex. 1, (45:00-45:06). Ex. 12, at 5-6 |
| 18 | He began moving the gun to his head, then back down again. | Ex. 1, (45:06-45:19) Ex. 12, at 6. |
| 19 | Llamas then looked around. During which, he moved the gun in an upward movement near his head while he walked toward the gate. | Ex. 1, (45:19-45:36). Ex. 12, at 6. |
| 20 | Once at the gate, Llamas walked and crawled around the barrier, with the gun still in his hand. | Ex. 1, (45:36-45:58). Ex. 12, at 6. |
| 21 | When Llamas was crawling, the gun was not continuously pointed at his head, but continuously in his hand. | Ex. 1, (46:03-46:18) Ex. 12, at 6. |
| 22 | Then, Llamas got up and moved forward. He had his left arm in the air and right hand holding onto the gun. Helicopter footage shows at this point the gun was not pointed at his head. | Ex. 1 (46:19-46:25). Ex. 12, at 6. |
| 23 | Helicopter officers issued commands to Llamas to surrender and drop his weapon. | Ex. 20, at 17:11-18:7 Ex. 22 at 34:17-35:8 |
| 24 | Llamas continued toward the perpendicular road (River road), adjacent to a residential home, switching the gun from his left hand to his right hand. | Ex. 1 (46:26-46:33). Ex. 7. at 2:3-13 Ex. 12, at 6. Ex. 22 at 41:16-24 |
| 25 | Once he reached River Road, he put his left arm in the air with the right hand still holding onto the gun in an upward motion near his head. | Ex. 1 (46:34-46:52). |
| 26 | Lt. Walsh, Sgt. Hubachek and Deputy McGuire first observed Llamas as he was heading north on the dirt | Ex. 20, at 17:11-18:7, 19:2-20:16 |

| | | |
|---|---|---|
| | road, they were positioned to the west of Llamas with some cover behind a vehicle, which was facing east. | Ex. 21, at 20:14-21:2.<br><br>Ex. 22, at 39:2-40:17. |
| 27 | On the day of the incident, Lieutenant Walsh was in charge of the overall command of the scene. As such, he supervised Sgt. Hubachek and Deputy McGuire, who are employed by Defendant County of Riverside, | Ex. 10, at ¶ 10.<br><br>Ex. 22, at 26:1-14; 27:4-6. |
| 28 | Hubachek functioned as a team lead with Riverside County Sheriff's Department Emergency Services, McGuire was a part of a Chevy Tahoe unit. He was near Sgt. Hubachek and Lieutenant Michael Walsh. | Ex. 20, at 10:21-25; 19:9-20:16;<br><br>Ex. 22, at 26:1-11, 27:1-3 |
| 29 | Upon seeing Llamas, Walsh yelled, "drop the gun!" | Ex. 8, at 10:12-10:28<br><br>Ex. 9, at 6:14-8:1 |
| 30 | At this point, Hubachek was aware that shots had been fired and that someone in the K-9 unit, possibly a dog, had been hit. | Ex. 20, at 22:9-16, 26:2-19. |
| 31 | Walsh again instructed Llamas to drop his weapon and to get on the ground. Llamas did not comply. | Ex. 8, at 10:29-10:38.<br><br>Ex. 9, at 6:14-8:1 |
| 32 | Walsh gives a third command for Llamas to drop his weapon immediately and to get on the ground. Llamas did not comply. | Ex. 8, at 10:39-10:41.<br><br>Ex. 9, at 6:14-8:1 |
| 33 | Walsh then gave a fourth verbal command for Llamas to drop the gun immediately and to get on the ground. | Ex. 8, at 10:42-10:48.<br><br>Ex. 9, at 6:14-8:1 |
| 34 | Instead of complying, Llamas turned off of River Road, and moved towards the telephone poles, with the gun still in his hand. | Ex. 1, (46:54-47:05).<br><br>Ex. 8, at 10:50-11:10.<br><br>Ex. 12, at 6. |
| 35 | As a result, Llamas moved out of Hubachek and McGuire's visual path, but the helicopter aided in tracking Llamas' movements and giving verbal commands. | Ex. 8, at 10:50-11:10.<br><br>Ex. 20, at 31:19-32:8, 32:23-33:4<br><br>Ex. 22, at 33:4-12. |
| 36 | Walsh heard the helicopter broadcast in his radio ear piece, including the verbal commands given by the helicopter and updates on Llamas' movements. | Ex. 22 at 33:14-34:14 |

| | | |
|---|---|---|
| 37 | Once he reached just past the telephone poles, he started to run again, with the gun still in his hand pointed upwards towards his head. | Ex. 1 at 47:06-47:20.<br><br>Ex. 12, at 6. |
| 38 | Llamas moved north, as Lt. Walsh, Sgt. Hubachek, and Deputy McGuire moved east to try to cut him off. Llamas then pointed the gun outward from his body. | Ex. 1, (47:21-47:28).<br><br>Ex. 20, at 30:2-17. |
| 39 | Reflected in the transcript of the body cam video worn by Hubachek, a deputy indicated a gun was pointed in their direction, | Ex. 6, at (00:00-00:13)<br><br>Ex. 7, at 2:14-18.<br><br>Ex. 20, at 41:24-42:11 |
| 40 | Llamas was moving towards a home that was an occupied dwelling. On that property there was a carport where McGuire observed two shadows. He believed those shadows to be two humans because earlier that day he had spoken to two older men who were sitting on the porch attached to that same property. | Ex. 21, at 25:23-28:2. |
| 41 | Shortly after, Sgt. Hubachek and Deputy McGuire saw Llamas again. He was in front of them, about 40-50 yards away. | Ex. 20, at 35:6-36:11. |
| 42 | Llamas turned towards Sgt. Hubachek and Deputy McGuire and the gun was oriented in the direction of deputies. | Ex. 1, (47:23-47:28).<br><br>Ex. 20 at 41:24 – 42:11<br><br>Ex. 21, at 33:3-15, 37:11 – 38:13 |
| 43 | At about 7:29 pm, Sgt. Hubachek and Deputy McGuire discharged their weapons due to the threat of Llamas' actions. Llamas then, fell to the ground. | Ex. 1, (47:29-47:30).<br><br>Ex. 12, at 6.<br><br>Ex. 20, at 41:21-42:11, 48:5-13, 48:20-49:9<br><br>Ex. 21, at 37:11-38:13. |
| 44 | Hubachek shot one volley, McGuire shot two volleys. | Ex. 22, at 73:12-24, |
| 45 | Walsh did not discharge his weapon and testified that at the time of the first volley, Hubachek and McGuire had a better view of Llamas. | Ex. 6, (00:00-00:16)<br><br>Ex. 8, (11:14-11:17)<br><br>Ex. 22, at 28:24-29:4; 118:17-119:10. |
| 46 | Hubachek was about 40 to 50 yards from Llamas when he aimed at the thoracic area of Llamas' body, near his chest and stomach area. During which, Sgt. Hubachek was stationary while Llamas was moving. | Ex. 20, at 15:4-16:13 |

| | | |
|---|---|---|
| 47 | Likewise, McGuire aimed at Llamas' torso. | Ex. 21, at 50:4-17 |
| 48 | After the first volley, Llamas' face was oriented in McGuire's direction. Llamas continued to move on the ground, including lifting the gun and holding it in the direction of the deputies. McGuire moved up to where he was about 35 to 45 yards away from Llamas and shot a second volley. | Ex. 1 at 47:30 – 47:40<br><br>Ex. 21, at 52:3-20 |
| 49 | Afterward, Hubachek, Walsh, and McGuire immediately moved towards Llamas and soon after administered medical care, as confirmed by helicopter and Lt. Walsh's body worn camera footage. | Ex. 1, (47:32-48:12); (51:34-54:41).<br><br>Ex. 8, (11:18-22:19)<br><br>Ex. 9, 13:19-23. 16:10-18:4<br><br>Ex. 22 at 58:15-59:13. |
| 50 | However, Llamas ultimately succumbed to his injuries. | Ex. 16, at ¶ 3. |
| 51 | Riverside County Sheriff's Department, Policy 300.4 (a), states that a deputy may use deadly force to protect himself or others from what he reasonably believes to be a threat of death or serious bodily injury. | Ex. 15, at p. 5.<br><br>Ex. 21, at 71:3-17. |
| 52 | Riverside County Sheriff's Department, Policy 300.4 (b), states that a deputy may use deadly force to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the deputy reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended. | Ex. 15, at p. 5. |
| 53 | Plaintiff, S.L. was born on July 8, 2013. | Ex. 24, at 8:3-7. |
| 54 | Plaintiff, S.L.'s guardian ad litem, Kristina Rose Llamas Leyva, is her legal mother and biological aunt. Ms. Leyva is Llamas' sister. | Ex. 17, at 13:16-19.<br><br>Ex. 18, at 10:11-12. |
| 55 | S.L. was adopted at 10 months old, by Ms. Leyva and has lived with her ever since. The rights of her biological parents were terminated. | Ex. 18, at 9:25-10:4, 29:8-20; 54:12-17. |
| 56 | Johnny Llamas never had legal custody of S.L. She was nine years old when he died. | Ex. 18, at 16:22-25, 49:25-50:3. |
| 57 | From the time of S.L.'s birth in 2013 to 2020, Ms. Leyva stated that Llamas occasionally stayed a few nights for short periods of time. However, Ms. Leyva maintained it was pretty much a place for | Ex. 18, at 10:13-11:6. |

**STATEMENT OF UNCONTROVERTED FACTS**

| | | |
|---|---|---|
| | him to store his belongings as "he was pretty much homeless." | |
| 58 | Plaintiff claims Llamas sent a pandemic stimulus check to S.L. These were nominal amounts and not clearly for specific items for S.L. | Ex. 18, at 25:14-28:2 |
| 59 | S.L. does not know the last time she saw Llamas. She never visited him in jail and did not see him after he got out of incarceration. | Ex. 24, at 8:16-21, 15:17-16:17. |
| 60 | Plaintiff V.L. was born on August 20, 2011, to Amber Snetsinger who testified Llamas is V.L.'s biological father. However, he is not listed on V.L.'s birth certificate. | Ex. 19, at 13:19-23. Ex. 25, at 9:21-22. |
| 61 | V.L.'s mother and Llamas were never married. In fact, Llamas never married. | Ex. 17, at 13:20-14:1 Ex. 19, at 14:21-22. |
| 62 | Ms. Snetsinger claimed she was in a relationship with Llamas at the time she got pregnant with V.L. but that the relationship ended because he became incarcerated. | Ex. 19, at 14:25-15:6 |
| 63 | At no time after he was released did Ms. Snetsinger make the effort to add Llamas to V.L.'s birth certificate, nor, has she ever initiated any legal proceedings with respect to parental rights and visitation for V.L, including child support. | Ex. 19, at 14:1-20. |
| 64 | V.L. has never lived with Decedent. | Ex. 19, at 15:7-9. Ex. 25, at 14:4-9. |
| 65 | V.L. only spoke to Llamas a handful of times in her life. | Ex. 19, at 22:16-20; 27:4-12 Ex. 25, at 18:19-21 |
| 66 | V.L. did not remember the last time she saw decedent in person and believed she has never seen him in person. | Ex. 25, at 17:3-19 |
| 67 | The only time V.L. spent physical time with Llamas was when she was 11 months old. She stayed with him for a month because he had just gotten out of jail. This was the last time she saw him. | Ex. 19, at 18:1-13, 25:14-21 Ex. 25, at 17:17-19 |
| 68 | V.L. only spoke with Llamas a handful of times but never when he was incarcerated. | Ex. 19, at 22:16-20; 27:4-12 Ex. 25, at 18:19-21 |
| 69 | Plaintiff Carolyn Campbell is the biological mother to Llamas, and was not financially dependent on | Ex. 17, at 11:6-13:6 |

| | | |
|---|---|---|
| | him. Between 2020 and 2023, Decedent would periodically live with Campbell at her residence for about a year. However he was not living there at the time of his death in April 2023. | |
| 70 | Plaintiff Campbell testified that Plaintiffs, S.L. and V.L. are Llamas' children, and thus brings her claims under an individual capacity. | Ex. 16.<br><br>Ex. 17, at 14:2-8 |
| 71 | There is no evidence that Plaintiff Campbell complied with the personal representative requirements mandated by statute, § 377.60. | Ex. 16, at ¶ 7, 88, 96. |

DATED:  May 16, 2025  **MANNING & KASS**
  **ELLROD, RAMIREZ, TRESTER LLP**


By:      /s/ Kayleigh Andersen
Eugene P. Ramirez
Lynn L. Carpenter
Kayleigh Andersen
Attorneys for Defendants, COUNTY OF RIVERSIDE, SHAWN HUBACHEK, and JIMMIE MCGUIRE