Eugene P. Ramirez (State Bar No. 134865)
  *eugene.ramirez@manningkass.com*
Lynn Carpenter (State Bar No. 310011)
  *lynn.carpenter@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
  *kayleigh.andersen@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendant, COUNTY OF
RIVERSIDE, SHAWN HUBACHEK and
JIMMIE MCGUIRE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.L. a minor by and through the Guardian Ad Litem Kristine Llamas Leyva, individually and as successor-in-interest to JOHNNY RAY LLAMAS, deceased; V.L., by and through the Guardian Ad Litem Amber Sietsinger, individually and as successor-in-interest to JOHNNY RAY LLAMAS deceased; and CAROLYN CAMPBELL, individually,<br><br>        Plaintiffs,<br><br>    v.<br><br>COUNTY OF RIVERSIDE; SHAWN HUBACHEK; JIMMIE MCGUIRE; and DOES 3¬10, inclusive,<br><br>        Defendant. | Case No.: 5:24-cv-00249-CAS(SPx)<br>Hon. Christina A. Snyder<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>*Concurrently filed with Defendants' Response Statement*<br><br>Date:    June 23, 2025<br>Time:    10:00<br>Crtrm.:  8D<br><br><br><br>*Action Filed:*      *02/01/2024* |

**TO THE HONORABLE COURT AND TO PLAINTIFF AND HIS**

**ATTORNEYS OF RECORD:**

Defendants County of Riverside, Shawn Hubachek, and Jimmie McGuire

(collectively "Defendants") submit the following Reply to Plaintiffs S.L., and her

Guardian ad Litem, V.L., and her Guardian ad Litem, and Carolyn Campbell's Opposition to Defendants' Motion to For Summary Judgment. Notably, since the filing of the moving papers, Plaintiffs have voluntarily dismissed Counts 2, 4, 5. Further, Plaintiff Campbell has voluntarily dismissed Counts 6-8. As such, the remaining include:

1.    Plaintiffs' (S.L. and V.L) first claim for § 1983 excessive force;

2.    Plaintiffs' (Campbell, S.L. and V.L) third claim for substantive due process/interference with familial relations under § 1983;

3.    Plaintiffs' (S.L. and V.L) sixth claim for battery – survival and wrongful death;

4.    Plaintiffs' (S.L. and V.L) seventh claim for negligence – survival and wrongful death;

5.    Plaintiffs' (S.L. and V.L) eighth claim for violation of the Bane Act.

Nonetheless, Plaintiffs have failed to carry their burden of setting forth admissible evidence demonstrating that they are entitled to relief on any of the remaining claims and, therefore, Defendants are entitled to judgment as a matter of law. Accordingly, Defendants respectfully request their Motion for Summary Judgment be granted in its entirety.

DATED:  June 9, 2025

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**


By:    /s/ Eugene Ramirez
Eugene Ramirez
Lynn Carpenter
Attorneys for Defendant, COUNTY OF RIVERSIDE, SHAWN HUBACHEK and JIMMIE MCGUIRE



## I.    <u>SUMMARY OF DEFENDANTS' POSITION</u>

Notwithstanding the undisputed facts, Plaintiffs S.L. and V.L.'s claims are barred as a matter of law. S.L.'s adoption severed her claims, as she does not fall into the limited exception. Likewise, plaintiffs have failed to provide substantial evidence to show Llamas was V.L.'s presumptive parent. Further, the Opposition dismissed all of Plaintiff Carolyn Campbell's claims that presented standing issues.[1] Lastly, all *Monell* claims have been dismissed, which means the County cannot be liable for the remaining section 1983 claims. **Simply put, but for Campbell's loss of familial relationship, all claims are unequivocally barred as a matter of law**.

It is undisputed that Johnny Llamas ("Llamas") was a violent and dangerous man who posed an imminent threat to deputies and bystanders. The undisputed facts confirm an extensive criminal history, accompanied by chronic incarceration. On the day of the incident, Llamas had multiple felony warrants out for his arrest, including a felony warrant for molestation of his thirteen-year-old niece. DEF UF 4, 11.  His propensity for violence did not stop with his family, as he had another felony warrant for armed robbery. DEF UF 4, 11. The danger he posed was further demonstrated when he shot and killed K-9 Rudy, a highly trained and heroic police canine. He killed Rudy minutes before the confrontation with Defendants McGuire and Hubachek. DEF UF 13. After which he tried to flee. In other words, he was a fleeing felon, as demonstrated by the inescapable and undisputed material facts.

The Opposition attempts to dispute many of the facts contained in Defendants'

---

[1] It is undisputed that Campbell cannot maintain a survivorship or wrongful death claim. DEF UF 69-71. Only her "loss of familial relationship" remains. Still, she can only bring this claim if a violation of a personal liberty interest occurred. However, she may not even have a cognizable interest. The Ninth Circuit, in a concurring opinion, recently questioned the existence of such a personal liberty interest between a parent and adult child that shows no further custodial relationship. *See Estate of Hernandez v. City of Los Angeles,* 2025 WL 1553910, at *17–20 (9th Cir. June 2, 2025). By doing so, the Court also highlighted a split of authority, where other circuits have found no protected liberty interest once a parent loses a custodial interest.  *See Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 923, 926-927 (9th Cir. 2024)

Statement of Uncontroverted Facts. However, upon close inspection, the Opposition runs afoul of Rule 56 by supporting these "disputes" with unauthenticated and inadmissible evidence, which fail to dispute the material context of Defendants facts. Also, the Opposition offers 84 "additional facts," that likewise do not contain any information that would create a true triable issue of fact. *See* Fed. R. Civ. P. 56(c)(2) ["Objection That a Fact is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."]

Given the remaining claim(s), the following cannot be controverted: (1) Defendants Hubachek and McGuire were aware of Llamas' felony warrants and extensive criminal history prior to shooting the first volley, (2) they also knew Llamas was armed while fleeing from law enforcement, (3) deputies observed residents in the vicinity where Llamas attempted to hide with his gun, (4) video footage shows that Llamas continuously had a gun in his hand from the time he killed Rudy to the time he confronted Defendants, (5) the pursuit that followed occurred near occupied residences, and (6) Llamas received multiple commands to drop his weapon but did not comply. DEF UF 1-2, 6-9, 11, 16-17, 23, 29, 31-33, 36-37, 40. Most importantly, eye witness testimony and objective video evidence demonstrate that Llamas turned his upper body and pointed the gun at the deputies before the first volley was fired. And, the video confirms that Llamas pointed his gun at the deputies between the first and second volley.

As such, there can be no finding of excessive force. Rather, the evidence demonstrates the reasonableness of Defendants' actions. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). In addition, if the opposing evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249-250 (1986). When one party's version of events is clearly contradicted by video evidence of the incident, that party's version is not credited. *Rice v. Morehouse*, 989F.3d 112, 1120 (9th Cir. 2021), *citing Schoeder v. Cty. of San Bernardino*, 2019 U.S. Dist. LEXIS 150020, *6, n.4 (C.D. Cal. 2019).

## II.    S.L. AND V.L. CLAIMS ARE BARRED AS A MATTER OF LAW

S.L, V.L., and Campbell's standing issues differ from one another, but the Opposition conflated the discrete issues amongst them. Rather, the Opposition argued under three *categories*: wrongful death, survivorship, and Fourteenth Amendment.[2] *See* Doc 44, 19:14-21:13.

### A.    S.L.'s Adoption Bars Her Claims As a Matter of Law.

It is undisputed: (1) S.L. was *legally* adopted and (2) Llamas never regained *legal* custody of S.L., after adoption. *See* UF 55-56. The statute is quite clear. In order to overcome the effect of adoption, two elements ***must*** be satisfied— which Plaintiffs failed to do. *See* Cal. Prob. Code § 6451(a)(emphasis added). Instead, the Opposition contended that S.L. and Llamas lived together and had frequent contact. *See* Doc. 44, 19:25-26, 20:7-8, 21:9-11. But, neither can overcome statutory law as it is undisputed that S.L. was adopted by her aunt well before the subject incident and not "by the spouse of either of the natural parents or after the death of either of the natural parents." Cal. Prob. Code § 6451(a)(1)-(2). UF 53-56. In the same way, "frequent contact", does not change the outcome, as Llamas lacked consistency in S.L's life. *See Phraner v. Cote Mart, Inc*., 55 Cal. App. 4th 166, 170 (1997). "[E]ven biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities..." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018). Llamas did not partake in child-rearing and was not an active parental

---

[2] There is no discrete Fourteenth Amendment standing applicable to S.L. and V.L. The Opposition misunderstood *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014), where that Court held out a liberty interest for parents of adult children, apart from a state law wrongful death claim. However, this interest has recently been called into question. *See infra* fn. 1. Plaintiffs' misplaced reliance does not establish a waiver of any standing arguments. *See* Doc 43, 17:17-21:19.

presence in S.L.'s life. UF 53-57. Even accepting the Opposition's position that S.L. and Llamas talked *frequently,* it is immaterial as a matter of law. "Few close relationships—even between blood relatives—can serve as a basis for asserting Fourteenth Amendment loss of companionship claims." *See id*., citing *Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1991). As a result, S.L.'s adoption bars her claims.

### B.    Llamas Is Not V.L.'s Presumptive Parent As a Matter of Law.

It is undisputed that Llamas does not appear on V.L.'s birth certificate as her father. DEF UF 60. Still, the parties agree "the mere existence of a biological link does not merit equivalent constitutional protection." *Lehr v. Robertson*, 463 U.S. 248, 261 (1983). As discussed in *Jason P. v. Danielle S*., 9 Cal. App. 5th 1000, 1019 (2017), the alleged parent must demonstrate a commitment to the child and their welfare to meet the presumptive parent standard. Put plainly, Llamas' conduct after V.L.'s birth matters most under this legal theory. *Id*. at 1020.[3] However, the Opposition failed to sufficiently show how Llamas received V.L. and held her out to be his child, required under Family Code § 7611(d).  *See In re T.R*., 132 Cal.App.4th 1202, 1211 (2005)(courts look at non-exhaustive factors like whether the party holds a child out as his own; paid pregnancy and birth expenses; promptly took legal action to obtain custody of the child; sought to have his name placed on the birth certificate.) **Llamas' actions do not have to align with every court analyzed factor, there just needs to be substantial evidence that he assumed parental responsibility for V.L., which the Plaintiffs did not and cannot provide**.

Like Llamas' relationship with S.L, he was not an active parent, and did not participate in V.L.'s child rearing. "[A] presumed parent is not just a casual friend of the other parent, or even a long-term boyfriend or girlfriend, but someone who has entered into a familial relationship with the child: someone who has demonstrated an

---

[3]  Note, the Opposition misquoted citations. *See* Doc 44, 20:1-3.

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

abiding commitment to the child and the child's well-being, regardless of his or her relationship with the child's other parent." *E.C. v. J.V.*, 202 Cal. App. 4th 1076, 1085 (2012). "The relevant relationship is that between the child and the alleged parent." *Id*. at 1088. It is undisputed that V.L. testified that she does not recall the last time she saw Llamas and did not recall ever meeting him. DEF UF 66.  It is undisputed that Llamas never engaged in child support or visitation proceedings. DEF UF 63. It is the actions of Llamas, not V.L. or her mother that matter. Thus, his consistent incarceration and lack of communication demonstrate a failure of commitment to V.L.'s welfare, not the care and concern of a loving parent. Simply engaging in a handful of phone calls does not support Llamas' commitment to parentage. *See In re J.H.*, 198 Cal. App. 4th 635, 644-47 (2011) (court found that Tyrone M., was not the presumed father, in facts analogous to V.L.'s circumstances.) Similar to *In re J.H*, there is **not substantial evidence** to support presumed. Thus, V.L.'s claims cannot withstand.

III. **DEFENDANTS' FORCE WAS CONSTITUTIONALLY REASONABLE**

All parties are in agreement the Ninth Circuit assesses reasonableness using the *Graham* factor from the objective perspective of law enforcement given the facts and circumstances confronting them. *Graham v. Connor*, 490 U.S. 386, 396-397 (1989). The parties are also in agreement that with respect to a deputies' use of deadly force, reasonableness may also be assessed under *Tennessee v. Garner*, 471 U.S. 1 (1985). This is often referred as the "fleeing felon" rule.

A.    **Llamas Was A Fleeing Felon & Imminent Threat**

In *Tennessee v. Garner*, the Court held that the use of deadly force "to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable." 471 U.S. 1, 11 (1985). Specifically, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, *either to the officer or to others*, it is not constitutionally unreasonable to prevent escape by using deadly force." Here, it is undisputed that Llamas had two active felony warrants,

including one for armed robbery. DEF UF 4. It is undisputed that Defendants Hubachek and McGuire were aware of these felony warrants and Llamas' extensive criminal history before using force. DEF 11. It is undisputed that Llamas was armed and actively evaded law enforcement on numerous occasions on the day of the incident, first by vehicle and then on foot while armed with a gun. DEF UF 1-2, 6-9. After killing K-9 Rudy, absconded again, with the gun in his hand. DEF UF 14-16. From this point on, video footage establishes that the gun remained in one of his hands at all times, thus it is uncontroverted. *See Scott v. Harris*, 550 U.S. 372 (2007).

"[I]f the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Garner*, 471 U.S. at 11–12. Defendants Hubachek and McGuire's decisions to use force were objectively reasonable given what transpired before discharging their weapons. It is undisputed that Lieutenant Walsh, who was standing next to Hubachek and McGuire, instructed Llamas to lower his weapon at least four times. UF 29, 31-33, 36, 38-39. In addition, Llamas received multiple verbal commands from the helicopter flying overhead . UF 35. However, he chose not to comply.

Defendants testified that they saw Llamas point the gun in their direction, just before shooting the first volley, when Llamas turned and looked over his shoulder, as demonstrated by the video evidence.



*See* DEF UF no. 42.

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Then, video evidence clearly shows that after the first volley, Llamas had his gun pointed at them from the ground.



*See* UF no. 48.

Therefore, Deputy McGuire's actions fell well within the range of conduct approved by the Supreme Court in *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014), which holds that an officer may continue shooting until the threat has ended.

Llamas was armed with deadly force and had just demonstrated his propensity to use it while trying to escape from law enforcement by running through residential property that was occupied. He failed to comply with commands to drop his gun. Importantly, the Defendants testified that they saw Llamas point his gun at them. Reasonableness does not require officers "to delay their fire until a suspect turns his weapon on them." *Estate of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023) Accordingly, the force used here was reasonable to stop the immediate threat from Llamas' actions.

**B.    Negligence and Battery Also Fail Since Force Was Reasonable.**

For reasons stated above, the claim for battery fails for the same reasons that plaintiffs' Fourth Amendment claim fails. *See Brown v. Ransweiler*, 171 Cal.App.4th 516, 526-28 (2009). The same is true with negligence. However, the Opposition cites a single case, stating that negligence "is broader than Fourth Amendment law" to

9

support its position. *See* Doc 44, 18:27-19:13. In sum, the Opposition predicates their negligence claim on several theories that deputies: (1) never discussed a plan should Llamas cross "a line of containment," (2) did not block a northward egress, (3) never issued commands or warnings, or (4) never utilized available less-lethal weapons (even though a police canine had been deployed). But, these reasons do not comport with the requisite standard. The *Hayes* Court and its progeny do not stand for the false proposition that any officer conduct before the officer's use of force can be actionable in negligence. There is no requirement that Defendants choose the *most* reasonable action or conduct *least* likely to cause harm, in order to avoid liability for negligence. *Hayes*, 57 Cal.4th at 632. (emphasis added.)  Plaintiffs encourage the same hindsight analysis that is prohibited by *Graham*, and likewise should be prohibited here.

### C.    The Bane Act Also Fails.

The Opposition failed to establish coercion independent from the coercion inherent in the violation of the constitutional right.  *Shoyoye v. Cnty. of L.A*., 203 Cal.App.4th 947, 959-60 (2012).  Put differently, the Opposition was required to show a specific intent, beyond a right to be free from unreasonable seizure.  Instead, Plaintiffs cited to a case that applied reckless disregard on completely disparate and distinguishable facts, to conclusively state that specific intent is shown. *See Rios v. City of Los Angeles*, 2022 WL 17219086 (C.D. Cal. Aug. 25, 2022)(the court looked at facts that included prolonged time in handcuffs, for no legitimate reason, and where the officers shot at the ground below Plaintiff's feet.) Plaintiffs incorrectly state that no warnings were given. This is the crux of their argument. However, as the evidence clearly establishes, Llamas did in fact received warnings on multiple occasions, but at no point did he indicate surrender or lower his weapon.

## IV.    **DEFENDANT CONDUCT DOES NOT SHOCKS THE CONSCIENCE**

The Opposition relies its argument on unsupported conclusions for its loss of familial relationship claim: (1) the deputies acted with deliberate indifference because they had time to deliberate starting from the point Llamas was "walking northward,

MANNING | KASS

holding the gun to his head" and (2) purpose-to-harm is met because "deputies first fired at Mr. Llamas back." *See* Doc. 44, 16:6-17:24. Plaintiffs mischaracterize the due process standard of conduct that "shocks the conscience." Importantly, the "shocks the conscience" standard is a subset of "deliberate indifference." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) Further, it is well established "the heightened purpose-to-harm standard applies where a suspect's evasive actions force the officers to act quickly." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Defendants' actions here were related to a legitimate law-enforcement objective. A "purpose-to-harm" cannot be found when law enforcement conduct was related a legitimate law-enforcement objective. *See Willis v. City of Fresno*, 520 Fed. Appx. 590, 592 (9th Cir. 2013). Further, self-defense and defense of others are legitimate law-enforcement objectives. *See Napouk*, 123 F.4th at 923.

The uncontroverted facts have established that Llamas was a fleeing felon, demonstrably evasive, and armed with a gun he was unafraid to use around occupied residences. It is non-dispositive that at times he had the gun to his head because he never complied with the command to drop his weapon. In other words, Llamas did everything he could to evade arrest up to and including threatening the lives of deputies and civilians,

## V.    <u>QUALIFIED IMMUNITY</u>

Plaintiffs must identify precedent that "squarely governs" the specific facts at issue. *See Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir. 2019). Plaintiffs failed to show that any reasonable officer in Defendants' position would have known "beyond debate," based on any case cited by Plaintiffs, that they were violating the Constitution. None of those cases involved a suspect who continued to flee on foot following a vehicle collision, shot and killed a police dog, put a gun to his head and kept moving closer to occupied residences without ever surrendering, or presented sufficiently similar facts so as to place the lawfulness of Defendants' actions beyond debate.

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1    In this matter, unlike *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013), there

2    is no testimonial evidence to dispute the deputies' testimony that Llamas did, in fact,

3    point the gun in their direction, which is supported by the objective Star9 video

4    evidence.  In *George* it was undisputed that George had not committed a crime, that

5    he was not resisting or attempting to evade arrest by flight, and his wife was

6    unharmed, which is entirely distinguishable from this case.  The Court found a factual

7    dispute as to whether George actually raised and pointed the barrel of the gun at

8    deputies or not to defeat summary judgment, which is not dispositive of qualified

9    immunity due to the distinguishable circumstances here.

10    In *Curnow v. Ridgecrest Police*, 952 F.2d 321, 324-25 (9th Cir. 1991), officers

11    broke down the door of the suspect's home. Officers shot the suspect in the back who

12    was initially standing next to – but not holding, an assault weapon.  The Court held

13    that officers could not have reasonably believed that the use of deadly force was

14    lawful, as suspect did not point the gun at officers and was not facing them when shot.

15    These are also distinguishable facts, as demonstrated by still frames from Star9 video.

16    Next, in *Estate of Lopez v. Gelhaus*, 871 F.3d 998, deputies shot a suspect that

17    was not committing a serious crime or attempting to evade, and there were many

18    factual disputes about whether he posed an immediate threat of death or serious bodily

19    injury at the time of the shooting due to inconsistencies in the deputies' testimony, a

20    reenactment of Lopez's movements, and the video evidence.  The District Court could

21    only determine that the barrel of the rifle was beginning to rise, and could have been

22    in only a slightly higher position that was not threatening to the deputies.  Again, that

23    is much different than the scenario encountered by the deputies, where Llamas

24    continued to point his gun at law enforcement even after the first volley.

25    Lastly, in *Hernandez*, 2025 WL 1553910 after the second volley, the suspect

26    did not continue to point the gun at the officer, which is distinguishable from the facts

27    at hand. As the video establishes, the gun remained in Llamas' hand pointed in the

28    direction of the deputies.

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1   DATED:  June 9, 2025              **MANNING & KASS**
2                                     **ELLROD, RAMIREZ, TRESTER LLP**

3

4                                     By:  _____ /s/ Eugene Ramirez _____
5                                          Eugene Ramirez
                                           Lynn Carpenter
6                                          Attorneys for Defendant, COUNTY OF
7                                          RIVERSIDE, SHAWN HUBACHEK and
                                           JIMMIE MCGUIRE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 801 S. Figueroa St, 15th Floor, Los Angeles, CA 90017-3012.

On June 9, 2025, I served true copies of the following document(s) described as **DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kayleigh Ann Andersen**
  kayleigh.andersen@manningkass.com,dxf@manningllp.com,kaa@manningllp.com

- **Lynn Louise Carpenter**
  Lynn.Carpenter@manningkass.com,Angela.Thompson@manningkass.com

- **Richard T Copeland**
  rtc@conflict-solution.com

- **Dale K Galipo**
  dalekgalipo@yahoo.com,dgilbert@galipolaw.com,blevine@galipolaw.com,evalenzuela@galipolaw.com,rvalentine@galipolaw.com,slaurel@galipolaw.com,CMayne@galipolaw.com,msincich@galipolaw.com,ldeleon@galipolaw.com,amonguia@galipolaw.com,coopermayne@recap.email,sanderson@galipolaw.com,hlee@galipolaw.com

- **Benjamin Stamler Levine**
  blevine@galipolaw.com

- **Garo Mardirossian**
  garo@garolaw.com,lourdes@garolaw.com

- **Lawrence D Marks**
  lmarks@garolaw.com,tdockweiler@garolaw.com,daniel@garolaw.com

- **Eugene P Ramirez**
  Eugene.Ramirez@manningkass.com,delia.flores@manningkass.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 9, 2025, at Los Angeles, California.


                                    /s/ Sandra Alarcon
                              Sandra Alarcon