Eugene P. Ramirez (State Bar No. 134865)
   *eugene.ramirez@manningkass.com*
Lynn Carpenter (State Bar No. 310011)
   *lynn.carpenter@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
   *kayleigh.andersen@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone:   (213) 624-6900
Facsimile:    (213) 624-6999

*Attorneys for Defendants County of Riverside,*
*Shawn Hubachek and Jimmie McGuire*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.L., a minor by and through the Guardian Ad Litem Kristine Llamas-Leyva, individually and as successor-in-interest to JOHNNY-RAY LLAMAS, *et al.*, | Case No. 5:24-cv-00249 CAS (SPx) |
| | **DEFENDANTS COUNTY OF RIVERSIDE, SHAWN HUBACHEK, AND JIMMIE MCGUIRE'S NOTICE OF APPEAL** |
| Plaintiffs, | Judge: Hon. Christina A. Snyder |
| v. | Courtroom: 8D |
| COUNTY OF RIVERSIDE, *et al.*, | Filed Date:   February 1, 2024 |
| Defendants. | Trial Date:    October 7, 2025 |

MANNING | KASS

Defendants' Notice of Appeal

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, under 28 U.S.C. § 1291, Defendants County of Riverside, Shawn Hubachek and Jimmie McGuire (collectively, "Defendants") appeal to the U.S. Court of Appeals for the Ninth Circuit from the Court's order denying in part Defendants' motion for summary judgment, which was filed and entered on June 23, 2025. *See* Dkt. No. 54; *see also Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

A copy of the Court's order is attached as **Exhibit A**.

In compliance with Rule 12(b) of the Federal Rules of Appellate Procedure and Ninth Circuit Rule 3-2, Defendants' Representation Statement is attached as **Exhibit B**.

DATED:  July 18, 2025          Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**


_____/s/ Eugene P. Ramirez___
Eugene P. Ramirez
Lynn Carpenter
Kayleigh Andersen

*Attorneys for Defendants County of Riverside, Shawn Hubachek, and Jimmie McGuire*

Defendants' Notice of Appeal

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|----------------------|------|---------------|
| Title | S.L. et al v. County of Riverside et al | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Gaye Limon | N/A |
|-----------------|------------|-----|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Dale Galipo
Lawrence Marks
Ben Levine

Attorneys Present for Defendants:

Eugene Ramirez

**Proceedings:**    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Dkt. 43, filed on May 16, 2025)

## I.    INTRODUCTION

On February 1, 2024, S.L., a minor by and through the guardian *ad litem* Kristine Llamas Leyva, individually and as successor in interest to Johnny Ray Llamas ("S.L."); V.L., by and through the guardian *ad litem* Amber Snetsinger, individually and as successor in interest to Johnny Ray Llamas ("V.L."); and Carolyn Campbell, individually ("Campbell"), filed this action against the County of Riverside ("the County") and Does 1-10.  Dkt. 1 ("Compl.").

On September 27, 2024, S.L., V.L., and Campbell (collectively, "plaintiffs") filed the operative first amended complaint, substituting Shawn Hubachek ("Hubachek") as Doe 1 and Jimmie McGuire ("McGuire") as Doe 2.  Dkt. 34 ("FAC").  Plaintiffs assert eight claims for relief: (1) excessive force in violation of plaintiffs' Fourth Amendment rights pursuant to 42 U.S.C. § 1983 ("Section 1983"); (2) denial of medical care in violation of plaintiffs' Fourth Amendment rights pursuant to Section 1983; (3) interference with familial relationship in violation of plaintiffs' Fourteenth Amendment rights pursuant to Section 1983; (4) unlawful custom, policy, or practice pursuant to Section 1983; (5) failure to train pursuant to Section 1983; (6) battery – survival and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|----------------------|------|---------------|
| Title | S.L. et al v. County of Riverside et al | | |

wrongful death ; (7) negligence – survival and wrongful death; and (8) violation of the
Bane Civil Rights Act, Cal. Civ. Code § 52.1.[1]  Id.

On May 16, 2025, Hubachek, McGuire, and the County (collectively,
"defendants") filed the instant motion for summary judgment.  Dkt. 43 ("Mot.").
Defendants concurrently filed a statement of uncontroverted facts, dkt. 43-2, as well as
declarations from Kayleigh Andersen and Jordan Merle and 25 exhibits, dkt. 43-3.

On June 2, 2025, plaintiffs filed an opposition.  Dkt. 44 ("Opp.").  Plaintiffs
concurrently filed a statement of genuine disputes of material fact, dkt. 44-1, as well as a
declaration from Benjamin Levine (dkt. 44-2), a declaration from Roger Clark (dkt. 44-
18), and 15 exhibits (dkts. 44-3-17).

In the opposition brief, plaintiffs voluntarily dismiss their second, fourth, and fifth
claims, as well as Campbell's sixth, seventh, and eighth claims.  Opp. at 1, n.1.  The
remaining claims appear to be the first claim by S.L. and V.L.; the third claim by all
plaintiffs; and the sixth, seventh, and eighth claims by S.L. and V.L.

On June 9, 2025, defendants filed a reply, dkt. 51 ("Reply"), as well as a response
to plaintiffs' statement of genuine disputes of material fact, dkt. 51-1.  The response
covers the 71 facts proffered by defendants, dkt. 51-1 at 1-28 ("Resp. 1"), and the 84
additional facts independently proffered by plaintiffs, dkt. 51-1 at 29-61 ("Resp. 2").[2]
Also on June 9, 2025, defendants filed objections to plaintiffs' evidence.  Dkt. 52
("Obj.").

On June 23, 2025, the Court held a hearing.  Defendants' motion for summary
judgment is presently before the Court.  Having carefully considered the parties'
arguments and submissions, the Court finds and concludes as follows.

---

[1] Initially, the first and second claims were asserted by S.L. and V.L. against Hubachek,
McGuire, and Does 3-10 (the "individual defendants"); the third claim was asserted by all
plaintiffs against the individual defendants; the fourth and fifth claims were asserted by
all plaintiffs against the County; and the sixth, seventh, and eighth claims were asserted
by all plaintiffs against all defendants.  FAC ¶¶ 38-98.
[2] The Court only refers to Resp. 2 where it is not duplicative of the facts in Resp. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|---|---|---|---|
| Title | S.L. et al v. County of Riverside et al | | |

## II.     BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.[3]

### A.     Events Leading Up to the Incident

On April 14, 2023, Riverside County Sheriffs Dispatch advised the Northern Perris County Unit that a suspect named Johnny Ray Llamas ("Llamas") was armed and driving a blue Chevy Tahoe, with the license plate 7BUC580. Resp. 1 ¶ 1. Per a 911 call, he was known to be staying at or near 22635 Shaw Court in Perris, California. Id. The reporting party who called 911 wished to remain anonymous, but he or she understood that law enforcement was searching for Llamas and advised that he was likely carrying a gun. Id. ¶ 2. Two weeks prior to April 14, 2023, Llamas ran from officers who had visited the same address on Shaw Court in relation to a report of stolen property. Id. ¶ 3.

On the day of the 911 call, Llamas was on probation and had outstanding felony warrants for his arrest. Id. ¶ 4. The warrants related to charges of armed robbery and molestation of his 13-year-old niece. Id. After officers received the 911 call, they were dispatched to the Shaw Court address, along with a police helicopter. Id. ¶ 5. Officers located Llamas not far from the address, when Llamas was driving the described blue Chevy Tahoe westbound toward Highway 74. Id. ¶ 6. Because Llamas did not stop for law enforcement, the officers attempted to deploy spikes in his vehicle's path. Id. However, Llamas continued on Highway 74 onto River Road, and officers on the ground lost sight of him near Robert Street. Id. Thereafter, an officer named Mark Wheeler reported that Llamas was seen running with a woman near the backside of 22305 River Road at about 4:45 p.m. Id. ¶ 8. An elderly woman who lived on River Road spoke directly to officers on the scene. Id. ¶ 9. She stated that she saw a man matching Llamas' description, whom she believed was possibly armed, fleeing across her property

---

[3] It appears to the Court that, of the evidence presented here, defendants object only to the autopsy report and the letter from Oklahoma's Child Support Services department. Obj. at 2-3. To the extent the Court relies on these documents, it may do so for the purpose of a motion for summary judgment because they could be presented "in a form admissible at trial" as public records pursuant to Fed. R. Evid. 803(8). See Block v. City of Los Angeles, 253 F.3d 410, 418–19 (9th Cir. 2001) (At summary judgment, "a party does not necessarily have to produce evidence in a form that would be admissible at trial.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|----------------------|------|---------------|
| Title    | S.L. et al v. County of Riverside et al | | |

alongside a woman.  Id.  She also stated that Llamas was heading in the direction of a
shed and she believed he aimed to hide in it.  Id.

In the following time period, in which the officers were unaware of Llamas' exact
location, Sergeant McFadden and Deputy David Devine led a tactical briefing prior to the
officers' search of the relevant parcels for Llamas.[4]  Id. ¶ 11.  Defendants Hubachek and
McGuire were present during this briefing.  Id.  The officers discussed Llamas'
"extensive criminal history which included previous contacts with firearms" and that
Llamas was actively being pursued for either rape, child molestation, or both.  Id.

The parties dispute what then occurred while the officers, including K-9 officers
and police dogs, were searching for Llamas.  Id. ¶¶ 12-13.  According to defendants, the
body-worn camera video footage of Deputy Shane Day ("Deputy Day") shows that
Deputy Day and his police dog Rudy came upon Llamas hiding in a tree, and that at
about 7:15 p.m., Llamas shot his gun toward Rudy, while other deputies were close by,
killing Rudy.  Id.  According to plaintiffs, the video footage only shows that Rudy ran
away from a group of officers toward a wooded area, while the officers remained a
considerable distance from the area, without ever seeing Llamas, as confirmed by the
deposition of Lieutenant Michael Walsh ("Lieutenant Walsh").  Id. ¶ 12.  Plaintiffs
further state that while one shot was allegedly heard by the officers, it is not captured on
the audio recordings, and neither of the individual defendants were in the vicinity when
this occurred.  Id.  Plaintiffs assert that, as the autopsy report states that Llamas' injuries
were "most consistent with canine activity," the dog bit Llamas.  Id. ¶ 13.

The parties agree that, as seen from the police helicopter in the air at about 7:20
p.m., Llamas was "hunkering down in some brush in the field" with a woman.  Id. ¶ 14.
Llamas and the woman then exited the brush and ran, with Llamas running ahead of the
woman.  Id. ¶ 15.  The parties agree that when Llamas was next seen walking down the
dirt road toward River Road, he had a gun in his hand.  Id. ¶ 17.  The parties dispute
where the gun was pointed at this time.  Id. ¶ 18.  According to defendants, Llamas began
moving the gun to his head and back down again.  Id.  Defendants assert that Llamas then
looked around and moved the gun upward toward his head while he walked toward the
gate near 22305 River Road.  Id. ¶ 19.  According to plaintiffs, Llamas only pointed the
gun toward his head, even while he briefly turned to look behind him.  Id. ¶¶ 18-19.

---

[4] Sergeant McFadden's first name is not listed in defendants' filings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|---|---|---|---|
| Title | S.L. et al v. County of Riverside et al | | |

The parties agree that, once Llamas arrived at the gate, he walked and crawled
around the barrier, with the gun still in his hand. Id. ¶ 20. When Llamas was crawling,
the parties again dispute whether the gun was continuously pointed at his head. Id. ¶ 21.
Llamas then got up and moved forward, with his left arm in the air and his right hand
holding the gun. Id. ¶ 22. The parties again dispute whether the gun was continuously
pointed at his head in these moments. Id.

The parties agree that officers in the helicopter then issued commands to Llamas to
surrender and drop his weapon, but they dispute whether or not these commands could be
heard and understood by Llamas. Id. ¶ 23. The parties agree that Llamas continued
toward River Road, switching the gun between his left and right hand. Id. ¶ 24.
Defendants state that Llamas was "adjacent to a residential home" at this time, but
plaintiffs assert that the evidence shows that there are no structures or residential homes
along the stretch of the dirt road that runs between the gate Llamas had just crossed and
River Road. Id. The parties agree that Llamas reached River Road and put his left arm in
the air, while holding the gun in his right hand, though they dispute whether the gun was
held "in an upward motion near his head" or pointed directly at his head. Id. ¶ 25.

**B.     Individual Defendants' Encounter with Llamas**

The parties agree that Lieutenant Walsh, defendant Hubachek, and defendant
McGuire first observed Llamas as he was heading north on the dirt road, when they were
positioned to the west of Llamas with some cover behind a vehicle. Id. ¶ 26. Additional
deputies were also positioned on River Road to the east of the dirt road, opposite
Lieutenant Walsh and the individual defendants. Resp. 2 ¶ 10. Lieutenant Walsh was in
charge of the overall command of the scene and supervised defendants Hubachek and
McGuire. Resp. 1 ¶ 27.

The deputies were positioned at River Road for a few minutes before Llamas
reached it from the south. Resp. 2 ¶ 16. However, they did not set up a barricade at the
north of River Road, which turned into a driveway, or take other measures to block
Llamas from accessing that driveway, even as they blocked him from moving east or
west on River Road. Id. ¶ 17.

Once Llamas reached the center dividing line of River Road, Lieutenant Walsh
yelled "drop the gun!" at him. Resp. 1 ¶ 29. At this time, Hubachek was aware that
previously, a police dog had "possibly" been shot, as relayed to him by Deputy Day. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|---|---|---|---|
| Title | S.L. et al v. County of Riverside et al | | |

¶ 30.  Lieutenant Walsh then instructed Llamas again to drop his weapon and to get on the ground.  Id. ¶ 31.  He repeated this command a third and fourth time.  Id. ¶¶ 32-33. The parties agree that Llamas did not comply, but dispute whether he heard or understood these commands.  Id. ¶¶ 31-33.  Llamas then turned onto a driveway that ran south to north from River Road.  Id. ¶ 34.  At this point, he was no longer visible by defendant Hubachek and defendant McGuire, but the helicopter aided them in tracking his movements and delivering verbal commands.  Id. ¶ 35.

Lieutenant Walsh heard the helicopter broadcast in his radio earpiece.  Id. ¶ 36. Lieutenant Walsh, defendant Hubachek, and defendant McGuire moved eastward along River Road, with Lieutenant Walsh driving in his vehicle, when they regained sight of Llamas.  Resp. 2 ¶ 19.  Lieutenant Walsh exited the vehicle, and the deputies stood in a line, close to the vehicle.  Id. ¶ 20.

Once Llamas walked past the telephone poles on the driveway, Llamas started to run again, with the gun still in his hand, pointed toward his head.  Resp. 1 ¶ 37. Lieutenant Walsh testified that Llamas pointing the firearm toward his own body made it "possible," in his mind, that Llamas was suicidal.  Resp. 2 ¶ 45.  The parties agree that Llamas moved north as Lieutenant Walsh, defendant Hubachek, and defendant McGuire moved east "to try to cut him off," but the parties dispute whether Llamas' gun was pointed outward or directly toward his head.  Resp. 1 ¶ 38.  At this time, per the transcript of defendant Hubachek's body-worn camera video footage, another, unidentified deputy said, "Gun's pointed right at us."  Id. ¶ 39; dkt. 43-3, Ex. 7.

Llamas was moving toward a property, though the parties dispute whether defendant McGuire knew that the property was an occupied residence.  Resp. 1 ¶ 40. According to defendants, McGuire observed two shadows on the property and a carport. Id.  Defendants state that he believed the shadows were two people, because earlier that day, he had spoken to two older men on the porch attached to the same property, referred to by McGuire as the "blue house."  Id.  According to plaintiffs, this assertion is not consistent with the camera footage.  Id.  Plaintiffs state that the driveway that Llamas walked on at this point led to a fork: turning left at the fork, it led west, toward a blue house, but turning right/straight at the fork, a separate portion of the driveway led north, parallel to and past the blue house.  Id.  Plaintiffs state that Llamas was moving right/straight at the fork and heading north, not toward the blue house where McGuire had allegedly seen two men earlier that day.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|---|---|---|---|
| Title | S.L. et al v. County of Riverside et al | | |

The parties agree that shortly after McGuire's sighting of the shadows, McGuire and Hubachek saw Llamas again, 40-50 yards in front of them. Id. ¶ 41. The parties dispute Llamas' orientation and the orientation of the gun in his hand at this time. Id. ¶ 42. Defendants state that Llamas was turned toward the individual defendants, with his gun pointed in their direction. Id. Plaintiffs assert that Llamas was continuously facing forward, toward the north, with his back toward the deputies, and his gun pointed at the right side of his head with his right hand. Id.

The parties agree that at about 7:29 p.m., McGuire and Hubachek discharged their weapons, with Hubachek shooting one volley, and McGuire shooting two volleys. Id. ¶¶ 43-44. Llamas, struck in the buttocks, then fell to the ground. Id. ¶ 43; Resp. 2 ¶ 24. Lieutenant Walsh did not discharge his weapon. Resp. 1 ¶ 45. The parties dispute where McGuire and Hubachek aimed on Llamas' body. Resp. 2 ¶¶ 46-47. Defendants state that they aimed at his thoracic area, near his chest and stomach, while plaintiffs assert that this was not possible, because Llamas' back was to the officers. Id. The parties dispute what occurred after the first volley. Id. ¶ 48. Defendants state that Llamas' face was oriented in McGuire's direction and Llamas continued to move on the ground, including lifting the gun and holding it in the officers' direction. Id. Defendants assert that this led McGuire to move forward, about 35-45 yards from Llamas, to fire a second volley. Id. Plaintiffs state that after the first volley, Llamas landed on his right side, with his right arm underneath him, which did not move or manipulate the gun, which was not pointed at the officers. Id. Plaintiffs assert that Llamas then pulled his right elbow further underneath his body to begin crawling and lifting his face westward, away from the officers. Id. According to plaintiffs, he then reached westward with his empty left hand to continue crawling westward and turned his torso toward the ground, as his right arm was pulled further underneath his body. Id. Plaintiffs state that Llamas was in this position when McGuire fired his second volley, and that approximately the same distance separated McGuire from Llamas during the second volley as during the first volley. Id.

McGuire's second volley, of four shots, struck Llamas in the head. Resp. 2 ¶ 28. When McGuire began firing the second volley, Lieutenant Walsh said "Jimmie…," though the parties dispute the meaning of this statement. Id. ¶ 29. At the time of the shooting, at least 20 officers were on the scene. Id. ¶ 33. Prior to the shooting, McGuire and Hubachek did not issue any commands to Llamas or verbally warn him that they would shoot. Id. ¶¶ 36-37. Llamas never made verbal threats heard by McGuire and Hubachek. Id. ¶ 40. The parties dispute whether the deputies could have taken cover

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                  'O'

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|----------------------|------|---------------|
| Title | S.L. et al v. County of Riverside et al | | |

behind Lieutenant Walsh's vehicle and whether less-lethal weapons in the deputies' vehicle were accessible to them.  Id. ¶¶ 42-43.

The parties agree that, after the second volley, Lieutenant Walsh and defendants McGuire and Hubachek immediately moved toward Llamas and soon after administered medical care.  Resp. 1 ¶ 49.  Llamas ultimately succumbed to his injuries.  Id. ¶ 50.

### C.    Llamas' Relationships with S.L., V.L., and Campbell

The parties agree that plaintiff S.L. was born on July 8, 2013.  Id. ¶ 53.  S.L.'s guardian *ad litem*, Kristina Rose Llamas Leyva ("Levya"), is S.L.'s legal mother and biological aunt, as she is Llamas' sister.  Id. ¶ 54.  S.L. was adopted at 10 months old by Levya and has lived with her ever since, as the rights of S.L.'s biological parents were terminated.  Id. ¶ 55.  Llamas never had legal custody of S.L., who was nine years old when Llamas died.  Id. ¶ 56.  Plaintiffs state that no evidence shows that Llamas consented to the termination of his legal rights as a parent.  Id.  The parties dispute the level of Llamas' involvement in S.L.'s life.  Id. ¶ 57.  According to defendants, Levya testified that Llamas occasionally stayed a few nights for short periods of time, but "he was pretty much homeless."  Id.  According to defendants, Levya testified that Llamas lived with them on several occasions for months at a time, and S.L. testified that he lived with her.  Id.  The parties agree that Llamas sent at least a portion of his pandemic stimulus check and provided money and some supplies for S.L. and for S.L.'s household.  Id. ¶ 58.  S.L. last saw Llamas around April 2020, before he went to jail.  Id. ¶ 59.  She did not visit him in jail because her guardian did not allow such visits.  Id.  When incarcerated, Llamas spoke with S.L. via phone and sent letters to her, and when not incarcerated, he celebrated every birthday with her.  Resp. 2 ¶¶ 72, 74.  S.L. enjoyed going on walks, talking, and playing with her father.  Id. ¶ 76.

The parties agree that V.L. was born on August 20, 2011 to Amber Snetsinger ("Snetsinger"), who testified that Llamas was V.L.'s biological father.  Resp. 1 ¶ 60.  Llamas is not listed on V.L.'s birth certificate; plaintiffs state that this was due to the fact that Llamas was incarcerated at the time of her birth and could not be present.  Id.  The parties agree that Snetsinger and Llamas were never married.  Id. ¶ 61.  Snetsinger was in a relationship with Llamas at the time that she got pregnant with V.L., but the relationship ended when Llamas was incarcerated.  Id. ¶ 62.  Snetsinger never attempted to add Llamas to V.L.'s birth certificate.  Id. ¶ 63.  Plaintiffs assert, however, that Snetsinger opened a child support case, as evidenced by a letter from Oklahoma's Child

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|------------------------|------|---------------|
| Title | S.L. et al v. County of Riverside et al | | |

Support Services department, noting that her child support case was closed on July 12, 2023 due to the non-custodial parent's death.  Id.  Plaintiffs also assert that Snetsinger's and V.L.'s deposition testimony show that they maintained a relationship with Llamas and with his relatives before and after his death, as V.L. visited him, had calls with him, and received financial support from him.  Id.  The parties agree that V.L. lived with Llamas for approximately one month when she was 11 months old, at his apartment in Lake Elsinore, after Llamas got out of jail.  Id. ¶ 64.  This was the last time V.L. saw Llamas in-person, though they saw each other in video calls thereafter.  Id. ¶ 67.

The parties dispute the level of communication between V.L. and Llamas.  Id. ¶ 65.  While defendants state that V.L. only spoke to him "a handful of times," plaintiffs assert that V.L. lived with him for a month, had numerous calls and video calls with him, and communicated with him through her mother when Llamas was incarcerated.  Id.  V.L. testified that she could not remember seeing Llamas in-person during her life.  Id. ¶ 66.  Llamas' incarceration prevented him from seeing V.L. in-person before V.L. and Snetsinger moved away from California.  Resp. 2 ¶ 63.

The parties agree that plaintiff Campbell is Llamas' biological mother.  Resp. 1 ¶ 69.  She was not financially dependent on him.  Id.  Between 2020 and 2023, Llamas periodically lived with Campbell at her residence, for about one year in total.  Id.  He did not live with Campbell at the time of his death.  Id.  When Llamas was incarcerated, Campbell always maintained communication with him, through mail and telephone calls.  Resp. 2 ¶ 81.  When he wasn't incarcerated, Llamas saw Campbell several times per week, and he was at her home the night before his death.  Id. ¶ 82.

### III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL   'O'

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|----------------------|------|---------------|
| Title | S.L. et al v. County of Riverside et al | | |

nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

Defendants argue that plaintiffs' claims fail because plaintiffs lack standing. Mot. at 16-20. Alternatively, defendants contend that the remaining federal claims fail because plaintiffs lack evidence to satisfy their required elements, and because the individual defendants are immune from suit. Id. at 6-11. Defendants also argue that the state law claims fail because plaintiffs lack evidence to satisfy their required elements. Id. at 13-15. The Court discusses each issue in turn.

### A.   Standing

#### 1.   Arguments Regarding S.L. and V.L.

As for S.L., defendants argue that she lacks standing for all of her claims due to her adoption. Mot. at 16. According to defendants, an adopted child may not bring a survival action or a wrongful death action because, once the parent-child relationship is severed, the child is no longer the parent's "successor in interest" under Cal. Civ. Proc. Code § 377.30 or the parent's "child" under Cal. Civ. Proc. Code § 377.60. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|---|---|---|---|
| Title | S.L. et al v. County of Riverside et al | | |

Defendants state that there is one exception to this in the Probate Code, but it does not apply to S.L., because she was adopted by her paternal aunt before Llamas' death. Id.

In opposition, plaintiffs argue that S.L. may bring both survival and wrongful death claims as Llamas' successor in interest and child. Opp. at 19-20. Plaintiffs contend that defendants have not adduced any documentation regarding S.L.'s adoption. Id. at 20. Plaintiffs assert that S.L. and Llamas had a parent-child relationship under Cal. Fam. Code § 7611(d), because S.L. lived with him repeatedly. Id. at 19. Further, plaintiffs argue that Llamas maintained a relationship with S.L.'s guardian as co-parents, sending money and providing supplies even when Llamas was incarcerated. Id. at 20. Plaintiffs also contend that Llamas celebrated all of S.L.'s birthdays when he was not incarcerated, and that they would call, text, video chat, and exchange cards until his death. Id. Finally, plaintiffs assert that S.L. has standing to assert a Fourteenth Amendment claim because Llamas maintained frequent contact with her and a parental role toward her, and there is no evidence that he surrendered or intended to surrender that role. Id. at 21.

In reply, defendants argue that it is undisputed that S.L. was legally adopted, that Llamas never regained legal custody of her, and that the two elements required for the Probate Code's exception to "overcome the effect of adoption" are unsatisfied. Reply at 5. Defendants assert that S.L.'s alleged "frequent contact" with Llamas cannot overcome statutory law, and even if it could, Llamas did not maintain consistent involvement in S.L.'s life. Id. Additionally, defendants argue that S.L.'s Fourteenth Amendment claim also fails, as "[f]ew close relationships—even between blood relatives—can serve as a basis for asserting Fourteenth Amendment loss of companionship claims." Id. at 6 (citing Wheeler v. City of Santa Clara, 894 F.3d 1046, 1058 (9th Cir. 2018)).

As for V.L., defendants also argue that she lacks standing to bring survival and wrongful death claims because she is not Llamas' successor in interest or Llamas' child. Mot. at 17. Defendants contend that V.L. cannot evidence a parent-child relationship under the laws of intestate succession. Id. Defendants assert that Llamas was not V.L.'s presumed parent under Cal. Fam. Code § 7611(d) because he did not receive her into his home and openly hold her out as his child. Id. Defendants argue that Llamas' name was never on V.L.'s birth certificate, V.L.'s mother was never married to Llamas, and V.L.'s mother never initiated legal proceedings with Llamas concerning his parental rights or attempts to add him to the birth certificate. Id. at 19. Further, defendants contend that V.L. never lived with Llamas and does not recall ever meeting him. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                                    'O'

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|------------------------|------|----------------|
| Title    | S.L. et al v. County of Riverside et al |  |  |

In opposition, plaintiffs argue that V.L. can pursue wrongful death claims as Llamas' child because she lived with Llamas for one month, satisfying the "receipt" requirement of Cal. Fam. Code § 7611(d). Opp. at 19. Plaintiffs contend that the primary reason that V.L. did not spend more time with Llamas was his incarceration. Id. Further, plaintiffs state that Llamas' conduct in relation to V.L. showed his desire for a parental relationship, as he maintained a relationship with V.L.'s mother as a co-parent and was eager to renew his parental role toward V.L. before his death. Id. at 20. Additionally, plaintiffs argue that V.L. can bring survivor claims because she is a successor in interest to Llamas and complied with the affidavit requirement of Cal. Civ. Proc. Code § 377.32(a). Id. Finally, according to plaintiffs, defendants failed to argue that V.L. lacked standing to bring her Fourteenth Amendment claim, and therefore, any such argument is now waived. Id. at 20, n.4.

In reply, defendants argue that plaintiffs fail to sufficiently show how Llamas received V.L. and held her out as his child. Reply at 6. Defendants contend that Llamas was not an active parent and did not partake in child-rearing for V.L. Id. According to defendants, it is undisputed that V.L. testified that she does not recall the last time she saw Llamas and did not recall ever meeting him, and that Llamas never engaged in child support or visitation proceedings. Id. at 7. Defendants state that "engaging in a handful of phone calls" is not sufficient to establish presumed parenthood. Id.

####     2.     Findings Regarding S.L. and V.L.

The Court begins with a clarification of the claims asserted by S.L. and V.L. It appears that they each bring the first claim, under the Fourth Amendment, as successors in interest to Llamas, and seek only survival damages. FAC ¶ 47. They each bring the third claim, under the Fourteenth Amendment, individually. Id. ¶ 64. They each bring the sixth and seventh claims, under state law, individually, seeking wrongful death damages, and as successors in interest to Llamas, seeking survival damages. Id. ¶¶ 87, 95. They each bring the eighth claim, also under state law, as successors in interest to Llamas, seeking survival damages. Id. ¶ 108.

The Court discusses each plaintiff's standing to assert survivorship, wrongful death, and Fourteenth Amendment claims in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|---|---|---|---|
| Title | S.L. et al v. County of Riverside et al | | |

*a. Survival Claims*

Survival actions are based on injuries incurred by the decedent. <u>Hayes v. Cnty. of San Diego</u>, 736 F.3d 1223, 1229 (9th Cir. 2013). As for S.L.'s first claim, "[i]n § 1983 actions… the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." <u>Moreland v. Las Vegas Metro. Police Dep't</u>, 159 F.3d 365, 369 (9th Cir. 1998) (citations omitted). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." <u>Id.</u>

California's statutory requirements for standing to bring a survival action are stated under Cal. Civ. Proc. Code § 377.30: "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest…, and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." <u>See also</u> <u>Tatum v. City & Cnty. of San Francisco</u>, 441 F.3d 1090, 1094, n.2 (9th Cir. 2006) ("Where there is no personal representative for the estate, the decedent's 'successor in interest' may prosecute the survival action if the person purporting to act as successor in interest satisfies the requirements of California law."). Here, the parties only dispute whether S.L. and V.L. are Llamas' successors in interest, as plaintiffs do not argue that they are personal representatives of his estate.

The "successor in interest" is defined as the beneficiary of the decedent's estate or "other successor in interest who succeeds to a cause of action." Cal. Civ. Proc. Code § 377.11. In California, "[a]doption severs parent-child relationships for purposes of intestate succession." <u>Wheeler v. City of Santa Clara</u>, 894 F.3d 1046, 1052 (9th Cir. 2018) (citing Cal. Prob. Code § 6451.7). Specifically, California's adoption statute provides:

(a) An adoption severs the relationship of parent and child between an adopted person and a natural parent of the adopted person unless both of the following requirements are satisfied:

(1) The natural parent and the adopted person lived together at any time as parent and child, or the natural parent was married to or cohabiting with the other natural parent at the time the person was conceived and died before the person's birth.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|---|---|---|---|
| Title | S.L. et al v. County of Riverside et al | | |

(2) The adoption was by the spouse of either of the natural parents or after the death of either of the natural parents.

(b) Neither a natural parent nor a relative of a natural parent, except for a wholeblood brother or sister of the adopted person or the issue of that brother or sister, inherits from or through the adopted person on the basis of a parent and child relationship between the adopted person and the natural parent that satisfies the requirements of paragraphs (1) and (2) of subdivision (a), unless the adoption is by the spouse or surviving spouse of that parent.

(c) For the purpose of this section, a prior adoptive parent and child relationship is treated as a natural parent and child relationship.

Cal. Prob. Code § 6451.

The Court first examines the standing of S.L. to assert a survivor claim. Viewing the facts in the light most favorable to her, the Court finds that it is undisputed that S.L., Llamas' biological daughter, was legally adopted by her biological, paternal aunt when S.L. was 10 months old. Resp. 1 ¶¶ 54-55. Accordingly, pursuant to Cal. Prob. Code § 6451, the parent-child relationship between Llamas and S.L. severed at the time of adoption, unless the elements in Cal. Prob. Code §§ 6451(a)(1) and (a)(2) were met. The Court finds that it is undisputed that S.L. was not adopted by the spouse of one of her natural parents, as she was instead adopted by her natural parent's sister. See Resp. 1 ¶ 54. Further, the Court finds it undisputed that S.L. was not adopted after the death of her natural parent; rather, S.L. was adopted long before Llamas' death, in 2014. See id. Therefore, it is undisputed that Cal. Prob. Code § 6451(a)(2) cannot be satisfied in these circumstances, and that the parent-child relationship between Llamas and S.L. severed for the purposes of intestate succession when she was adopted at 10 months old. Accordingly, S.L. cannot qualify as Llamas' successor in interest under California's survivorship law and cannot assert a survival action on his behalf, as a matter of law. See Wheeler, 894 F.3d at 1060 (affirming district court that found that California's survivorship law prevented plaintiff from bringing survival action on behalf of decedent, when plaintiff was the biological son of decedent and had maintained a close relationship with decedent, but had been adopted by other parents as an infant).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL    'O'

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|----------------------|------|---------------|
| Title | S.L. et al v. County of Riverside et al | | |

The Court finds that S.L.'s other survivor claims, including her sixth claim for battery, seventh claim for negligence, and eighth claim under the Bane Act, fail for the same reasons.

Turning to the standing of V.L., however, the Court finds that summary judgment is not warranted. "[A]t the summary judgment stage[,] the plaintiffs need not establish that they in fact have standing, but only that there is a genuine question of material fact as to the standing elements." Cent. Delta Water Agency v. United States, 306 F.3d 938, 947 (9th Cir. 2002). Viewing the facts in the light most favorable to plaintiffs, a reasonable juror could find that V.L., as Llamas' child, is a beneficiary of Llamas' estate and therefore his successor in interest. See Cal. Civ. Proc. Code § 377.11.

Under California law, one method by which a person is "presumed" to be the natural parent of a child requires that "[t]he presumed parent receive[] the child into their home and openly hold[] out the child as their natural child." Cal. Fam. Code § 7611(d). "A party seeking to establish he is a presumed parent is not required to show that he acted as a parent to the child for a specific period." Jason P. v. Danielle S., 9 Cal. App. 5th 1000, 1021 (2017). In other words, "receipt of the child into the home must be sufficiently unambiguous as to constitute a clear declaration regarding the nature of the relationship, but it need not continue for any specific duration." Charisma R. v. Kristina S., 175 Cal. App. 4th 361, 374 (2009). "[A] parent need not be a perfect parent to be found to have received a child into his or her home… [but] simply must demonstrate a parental relationship, however imperfect." Jason P., 9 Cal. App. 5th at 1023. "In making this determination, [California] courts look at the parent's conduct in relation to the child." Schmidt v. Cnty. of San Diego, No. 23-CV-0899 W (DDL), 2023 WL 8812877, at *2 (S.D. Cal. Dec. 20, 2023).

Here, it is undisputed that Llamas received V.L. into his home when Llamas was first released from incarceration, when V.L. was 11 months old. Resp. 1 ¶ 67; Resp. 2 ¶ 62. It is further undisputed that, at this time, V.L. lived with him for one month. Id. While defendants contend that Llamas' conduct toward V.L. does not demonstrate a parental relationship, the Court finds that a juror, making all reasonable inferences in plaintiffs' favor, could conclude otherwise. In doing so, a juror could rely on the following facts proffered by plaintiffs: Llamas sent money to V.L.'s mother during V.L.'s childhood to assist her with expenses for V.L.; when Llamas was incarcerated, he had his sister help him send money to V.L.'s mother, and would pass messages to V.L. and check

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|------------------------|------|----------------|
| Title | S.L. et al v. County of Riverside et al | | |

on her through her mother; when he was not incarcerated, he would call, text, and video chat with V.L.; V.L. and Llamas spoke "weekly" in the months leading up to his death; and V.L. made plans to visit Llamas in California in the summer of 2023. Resp. 2 ¶¶ 64-68. Accordingly, the Court finds that disputed factual issues related to Llamas' presumed parenthood over V.L., and therefore V.L.'s status as a successor in interest to Llamas, preclude the Court from granting summary judgment on this issue. The Court finds that V.L.'s other survivor claims, including her sixth claim for battery, seventh claim for negligence, and eighth claim under the Bane Act, survive for the same reasons.

### b. Wrongful Death Claims

S.L. and V.L.'s sixth and seventh claims, for battery and negligence under state law, were also asserted individually as wrongful death claims. Wrongful death actions are based on personal injuries resulting from the death of another. Hayes, 736 F.3d at 1229. These claims are governed by Cal. Civ. Proc. Code § 377.60, which provides, in pertinent part:

> A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:
>
> (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession. If the parents of the decedent would be entitled to bring an action under this subdivision, and the parents are deceased, then the legal guardians of the decedent, if any, may bring an action under this subdivision as if they were the decedent's parents.
>
> (b)(1) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, parents, or the legal guardians of the decedent if the parents are deceased.
>
> …
>
> (c) A minor, whether or not qualified under subdivision (a) or (b), if, at the time of the decedent's death, the minor resided for the previous 180 days in the decedent's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|---|---|---|---|
| Title | S.L. et al v. County of Riverside et al | | |

household and was dependent on the decedent for one-half or more of the minor's support.

Cal. Civ. Proc. Code § 377.60. "Because an action for wrongful death is governed solely by statute, 'the right to bring one is limited only to those persons described by the Legislature in section 377.60.'" Phraner v. Cote Mart, Inc., 55 Cal. App. 4th 166, 168 (1997) (citation omitted).

The Court begins with a discussion of S.L. Viewing the record in the light most favorable to plaintiffs, the Court finds that it is undisputed that S.L. was not Llamas' personal representative, and was not in one of the other categories of "persons" listed in § 377.60 as eligible to assert a wrongful death claim on his behalf. Plaintiffs do not offer any evidence that S.L. was Llamas' personal representative; that S.L. was dependent on Llamas, see § 377.60(b)(1); or that S.L. resided in Llamas' household during the 180 days prior to his death and was dependent on him for at least half of her required support, see § 377.60(c). Plaintiffs appear to narrow their argument to § 377.60(a), asserting that S.L. was Llamas' "child." However, as established previously, it is undisputed that the parent-child relationship between Llamas and S.L. was terminated at the time of her adoption in 2014. S.L. therefore lacks standing to bring her sixth and seventh claims as wrongful death actions. See Phraner, 55 Cal. App. 4th at 168 (declining to "judicially create standing in wrongful death actions for children who maintain a relationship with their biological parent even after adoption."). Accordingly, defendants are entitled to judgment as a matter of law on S.L.'s sixth and seventh claims.

Turning to V.L.'s wrongful death claims, the Court again finds that V.L.'s standing to sue will depend on whether or not she is deemed Llamas' child under Cal. Civ. Proc. Code § 377.60. The Court finds that a triable issue exists here, as discussed above, due to disputed facts regarding whether Llamas is V.L.'s presumed parent. If a reasonable jury determines that Llamas was her presumed parent, V.L. will have standing to bring these claims.

### c. Fourteenth Amendment Claims

Separately, the Court analyzes S.L. and V.L.'s third claim, under the Fourteenth Amendment, brought by each plaintiff individually. "A decedent's parents and children generally have the right to assert substantive due process claims under the Fourteenth Amendment." Wheeler, 894 F.3d at 1057 (citations omitted). "Even though state law typically governs legal familial relationships—including the inheritance of property,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|---|---|---|---|
| Title | S.L. et al v. County of Riverside et al | | |

adoption, child custody, marriage, and divorce—the Federal Constitution in some cases supersedes state law and provides greater protection for certain family relationships." Id. (citations omitted). "Judicially enforceable Fourteenth Amendment interests require enduring relationships reflecting an assumption of parental responsibility and 'stem[ ] from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in promoting a way of life through the instruction of children.'" Id. at 1058 (citing Lehr v. Robertson, 463 U.S. 248, 261 (1983)). "Although case law mostly addresses this issue from the perspective of the parent's rights rather than the child's, children's Fourteenth Amendment rights to companionship with their parents have been interpreted as reciprocal to their parents' rights." Id. (citing Smith v. City of Fontana, 818 F.2d 1411, 1418 (9th Cir. 1987)).

"[A]t the summary judgment stage[,] the plaintiffs need not establish that they in fact have standing, but only that there is a genuine question of material fact as to the standing elements." Cent. Delta Water Agency, 306 F.3d at 947. Here, viewing the facts in the light most favorable to plaintiffs, the Court finds that plaintiffs have, at the very least, raised a material question of fact as to whether Llamas "maintained consistent involvement" in S.L.'s life and participated in sufficient "child-rearing activities" to enable their relationship "to be entitled to [] Fourteenth Amendment protections." See Wheeler, 894 F.3d at 1058. Defendants do not dispute that Llamas, S.L.'s biological father, lived with S.L. for extended periods of time; that when Llamas was incarcerated, he spoke with S.L. over the phone and sent her letters; and that when he was not incarcerated, he provided money and supplies to care for S.L. and celebrated S.L.'s birthdays with her. Resp. 2 ¶¶ 71-74. Because a reasonable juror could find that Llamas was sufficiently involved in raising S.L. to constitute a cognizable parent-child relationship protected by the Fourteenth Amendment, the Court concludes that summary judgment in favor of defendants on this issue is not warranted.[5]

---

[5] The Court acknowledges that, in Wheeler, the Ninth Circuit held that an adopted child failed to state a Fourteenth Amendment claim for the death of his biological mother. Wheeler, 894 F.3d at 1058. However, the Ninth Circuit explicitly "confine[d]" its holding to the alleged facts of the relationship in Wheeler, while stating that "[q]uestions concerning *all* adopted-out children or those raised in non-traditional family arrangements are not before us today." Id. (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|----------------------|------|---------------|
| Title | S.L. et al v. County of Riverside et al | | |

Similarly, the Court finds that plaintiffs have presented triable issues as to V.L.'s standing to assert a Fourteenth Amendment claim in these circumstances. The same facts discussed in Section IV(A)(2)(a) and (b) regarding the relationship between Llamas and V.L. could lead a reasonable juror to conclude that Llamas "maintained consistent involvement" in V.L.'s life and participated in sufficient "child-rearing activities" to trigger Fourteenth Amendment protection. Therefore, defendants are not entitled to judgment as a matter of law.

### 3. Findings Regarding Campbell

Even though Campbell dismissed her sixth, seventh, and eighth claims in her opposition brief, she preserved her third claim under the Fourteenth Amendment, asserted as an individual, for interference with familial relationship. Opp. at 1, n.1. With regard to that claim, the Court finds that Campbell, as Llamas' mother, has standing to sue. See Little v. City of Manhattan Beach, 21 F. App'x 651, 652 (9th Cir. 2001); Moreland, 159 F.3d at 371. The Court does not analyze defendants' arguments regarding Campbell's now-dismissed claims.

### B. Federal Claims

Section 1983 provides a claim against a person who, acting under color of state law, deprives another of rights guaranteed under the U.S. Constitution. "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (citation omitted). The parties do not dispute that Hubachek and McGuire acted under color of state law. However, defendants contend that, as a matter of law, their actions did not deprive plaintiffs of their Fourth or Fourteenth Amendment rights.

### 1. Excessive Force in Violation of the Fourth Amendment

Defendants argue that plaintiffs' Fourth Amendment excessive force claims fail because defendants acted reasonably as a matter of law. Mot. at 7.

An excessive force claim is analyzed under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989). The relevant inquiry is whether officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397 (quotation and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | | Date | June 23, 2025 |
|----------|------------------------|--|------|---------------|
| Title | S.L. et al v. County of Riverside et al | | | |

citation omitted).  "The calculus of reasonableness must embody allowance for the fact
that police officers are often forced to make split-second judgments-in circumstances that
are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a
particular situation."  Id. at 396-97.  However, "it is equally true that even where some
force is justified, the amount actually used may be excessive."  Santos v. Gates, 287 F.3d
846, 853 (9th Cir. 2002).  Courts apply a balancing test to determine whether force used
is reasonable.  Graham, 490 U.S. at 396.  Courts "must balance [1] the nature and quality
of the intrusion on the individual's Fourth Amendment interests against [2] the
importance of the governmental interests alleged to justify the intrusion."  Scott v. Harris,
550 U.S. 372, 383 (2007) (quotation omitted).

     First, courts evaluate "the type and amount of force inflicted."  Miller v. Clark
Cnty., 340 F.3d 959, 964 (9th Cir. 2003).  In the instant circumstances, the parties do not
dispute that the use of deadly force on Llamas was a severe intrusion on his Fourth
Amendment rights.  See Tennessee v. Garner, 471 U.S. 1, 9 (1985) ("The intrusiveness
of… deadly force is unmatched.").

     Second, courts evaluate the countervailing governmental interests by considering a
range of factors, including: (a) whether the suspect was actively resisting or attempting to
evade arrest by flight; (b) the severity of the crime at issue; and (c) whether the suspect
posed an immediate threat to the safety of the officers or others.  Lal v. California, 746
F.3d 1112, 1117 (9th Cir. 2014).  This list is not exhaustive, though, and courts also
consider whether the officer warned the suspect prior to use of force, Bryan v.
MacPherson, 630 F.3d 805, 831 (9th Cir. 2010); the parties' relative culpability, Espinosa
v. City & Cnty. of San Francisco, 598 F.3d 528, 537 (9th Cir. 2010); "whether there were
less intrusive means of force that might have been used," Glenn v. Washington Cnty.,
673 F.3d 864, 876 (9th Cir. 2011); and "whether the suspect… exhibited signs of mental
illness," Vos v. City of Newport Beach, 892 F.3d 1024, 1034 (9th Cir. 2018).
Nonetheless, the "most important" factor is whether the suspect posed an "immediate
threat to the safety of the officers or others."  Bryan, 630 F.3d at 826.

     Examining the Graham factors, defendants first contend that the crimes at issue
were severe, because Llamas was on probation and law enforcement had been searching
for him at the time of the incident and knew he was armed.  Mot. at 7.  According to
defendants, felony warrants were active for Llamas' arrest related to serious crimes,
including the molestation of his niece and armed robbery.  Id.  Second, defendants argue

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | | Date | June 23, 2025 |
|---|---|---|---|---|
| Title | S.L. et al v. County of Riverside et al | | | |

that Llamas posed an immediate threat, as video footage "confirms" that Llamas was armed with a gun throughout the encounter and oriented the gun toward the deputies. Id. at 8. Further, defendants assert that Hubachek and McGuire were aware of Llamas' "extensive violent criminal history," and that they were surrounded by occupied residential dwellings at the time of the incident. Id. Third, defendants argue that Llamas was hiding to evade arrest, i.e., that he was a fleeing suspect. Id. at 9. Defendants state that Llamas hid near a residential property where the incident later occurred, then in a tree, then fired his weapon and killed a police dog, and then hid again. Id. Defendants contend that at the time of the use of force, Hubachek was aware that "shots had been fired" and that "someone… possibly a dog[,]" had been hit. Id. Further, defendants argue that Llamas resisted by failing to comply when Lieutenant Walsh instructed him to lower his weapon four times. Id.

In opposition, plaintiffs argue that the individual defendants' use of deadly force was unreasonable. Opp. at 7. Plaintiffs contend that the "severity of the crime" relates to the initial crime that prompted a police response, and the most recent crime allegedly occurred one week before the incident. Id. at 8. Therefore, according to plaintiffs, the pursuit did not commence following a just-committed crime, mitigating this factor's weight. Id. Plaintiffs also state that this factor is mitigated because Llamas was greatly outnumbered by law enforcement. Id. Next, plaintiffs argue that Llamas did not pose an immediate threat, and the "mere" fact that he possessed a weapon cannot justify deadly force. Id. Plaintiffs contend that defendants' assertion that Llamas was turning toward them with a gun is contradicted by the video evidence. Id. According to plaintiffs, the evidence shows that Hubachek and McGuire shot when "Llamas had his back toward them and the gun to his head," standing 150 feet away. Id. at 10. Further, plaintiffs assert that Llamas was moving north, "toward an area where no people were known to be," and had not verbally threatened anyone. Id. Plaintiffs state that Llamas was first hit from behind in the buttocks, and by McGuire's second round, Llamas "was crawling on the ground, already shot, looking west, with the gun underneath him." Id.

Plaintiffs argue that a reasonable deputy would have understood that Llamas posed no immediate threat of death or serious bodily harm. Id. Plaintiffs contend that even the officers acknowledged that, based on their training, it would have been inappropriate to shoot Llamas if he had kept the gun pointed toward his head and had not turned around—as shown by the videos. Id. As for the remaining Graham factors, plaintiffs argue that Llamas never used or attempted to use force against the individual officers to resist them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|----------------------|------|---------------|
| Title | S.L. et al v. County of Riverside et al | | |

Id. at 11. Plaintiffs contend that an individual's erratic behavior and failure to comply with an officer's commands do not support the use of significant force. Id. Additionally, plaintiffs assert that neither individual defendant warned Llamas that they would shoot if he did not comply, even though a warning was feasible. Id. Further, plaintiffs contend that the individual defendants did not consider the other options available to them, as they did not plan ahead for Llamas to potentially cross their containment line or use less-lethal weapons. Id. at 12-13. Finally, plaintiffs argue that a reasonable deputy would have considered that Llamas was suicidal. Id. at 13.

In reply, defendants argue that the officers' use of force was reasonable because it is undisputed that Llamas was a fleeing felon with two outstanding warrants for his arrest; that Hubachek and McGuire knew of these warrants and Llamas' criminal history; that Llamas was armed and evading law enforcement, by vehicle and then on foot; and that Llamas then killed a police dog and absconded again. Reply at 7-8. According to defendants, from this point on in the video footage, the gun remained in Llamas' hands at all times. Id. at 8. Defendants state that it is also undisputed that Llamas received commands to comply from Lieutenant Walsh and the helicopter flying overhead. Id. Next, defendants contend that the officers testified that they saw Llamas point his gun in their direction before they fired at him, as confirmed in the video footage. Id. Further, defendants assert that the video footage shows that after the first shots, Llamas' gun remained pointed at the officers from the ground. Id. at 9.

Having considered the severity of the intrusion and the importance of the government's interests, the Court must balance these two considerations in order to determine whether the force used was reasonable. Santos, 287 F.3d at 854. Here, reasonable minds could differ on whether the countervailing governmental interests justify the amount of force used by Hubachek and McGuire. There are genuine disputes as to the reasonableness of the force used, particularly in relation to the threat posed by Llamas throughout the incident. Considering the camera footage and the deposition testimony from the officers, a reasonable jury could choose to credit plaintiffs' account or defendants' account of the events leading up to the use of deadly force, creating a triable issue. Viewing the evidence most favorably to plaintiffs, a juror could find that Llamas only pointed the gun toward himself, and was first shot when he was walking away from the individual defendants, with his back toward them, not having made any verbal threats. A reasonable juror could also infer that, at the time of the second volley, Llamas was on the ground, facing the ground, with his gun beneath him, attempting to crawl away.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|------------------------|------|----------------|
| Title | S.L. et al v. County of Riverside et al | | |

Similarly, jurors could disagree as to whether a reasonable officer in the individual defendants' shoes would have believed that occupied residential homes were near Llamas and the officers. Additionally, a reasonable juror could determine that Llamas' pointing of the gun toward himself indicated signs of mental illness. These disputed facts may lead the trier-of-fact to conclude that Llamas did not pose an immediate threat and that the government's interest in the use of deadly force was diminished.

As for the other <u>Graham</u> factors, it appears undisputed that Lieutenant Walsh issued commands to Llamas to comply, but Hubachek and McGuire did not. However, no officer issued a warning to Llamas that he would be shot if he did not comply with the commands.[6] It also appears undisputed that Llamas was charged with serious crimes at the time of the officers' search, though the crimes allegedly occurred at least one week before the incident. There are genuine disputed issues over whether the individual defendants could have used less-lethal weapons that were inside their vehicle and planned for Llamas' potential crossing of the containment line. Accordingly, examining the totality of the circumstances and the evidence in the light most favorable to plaintiffs, the Court finds that judgment as a matter of law is not warranted on V.L.'s first claim.

      2.   <u>Interference with Familial Relationship in Violation of the Fourteenth Amendment</u>

Defendants argue that plaintiffs' Fourteenth Amendment claim fails because plaintiffs lack evidence that the individual officers acted with deliberate indifference or purpose to harm. Mot. at 10. Defendants assert that Hubachek and McGuire did not have enough time for actual deliberation, as Llamas fled through a residential neighborhood, with a gun pointed toward them, after shooting and killing a police dog. <u>Id.</u>

In opposition, plaintiffs argue that the individual defendants had time to deliberate before shooting Llamas, and therefore, only the "deliberate indifference" standard applies, not the "purpose to harm" standard. Opp. at 16-17. Plaintiffs contend that "[w]ell before" the individual defendants saw Llamas, the helicopter advised them that he

---

[6] <u>Bryan</u> confirmed that one relevant factor in the <u>Graham</u> analysis is a warning from the police officer, when feasible, that use of force is imminent if the plaintiff does not comply. <u>See</u> <u>Bryan</u>, 630 F.3d at 831. The Court acknowledges that this kind of warning is distinct from a command to comply.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|------------------------|------|----------------|
| Title | S.L. et al v. County of Riverside et al | | |

was walking northward, holding the gun to his head. Id. at 17. Plaintiffs assert that the individual defendants "could have prepared for [Llamas'] approach and taken measures to maintain the containment line, including by blocking the obvious path across it," or by discussing the fact that McGuire had allegedly seen two men at the blue house earlier. Id. Plaintiffs therefore argue that the individual defendants could predict, in advance, where Llamas was walking, and there was no need for a "snap judgment." Id. Even if the "purpose to harm" standard is applied, plaintiffs argue that a reasonable juror could find that Hubachek and McGuire aimed to harm Llamas, because they first shot him in the back, when he posed no threat, and McGuire continued shooting when Llamas was on the ground, not facing or aiming his gun toward the officers. Id.

In reply, defendants argue that because Llamas was an evasive fleeing felon and armed with a gun around occupied residences, it is clear that Hubachek and McGuire's actions were related to a legitimate law enforcement objective. Reply at 11. Therefore, according to defendants, they did not act with a purpose to harm as a matter of law. Id.

Children and parents of a decedent have a constitutionally protected liberty interest under the Fourteenth Amendment in the decedent's "companionship and society." Curnow By & Through Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991). Official conduct that 'shocks the conscience' in depriving children and parents of that interest is cognizable as a violation of due process. Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010). In determining whether an officer's force shocks the conscience, the court first asks whether the circumstances of the case allowed the officer to have actual deliberation. Id. Deliberation is impractical where a suspect's evasive actions force the officers to act quickly or when dealing with other fast paced situations posing safety concerns. Tatum v. Moody, 768 F.3d 806, 821 (9th Cir. 2014).

Where actual deliberation is possible, the plaintiff must show that the defendant acted with "deliberate indifference" such that the challenged conduct "shocks the conscience." Wilkinson, 610 F.3d at 554. Deliberate indifference involves the conscious or reckless disregard of the consequence of one's acts or omissions. Moody, 768 F.3d at 821 (citing Gnatt v. City of Los Angeles, 717 F.3d 702, 708 (9th Cir. 2013)). That is, to show deliberate indifference, a plaintiff must show more than negligence, but does not need to show that an officer understands that the specific harm will occur. Id. On the other hand, to satisfy the purpose to harm standard, a plaintiff must show that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|---|---|---|---|
| Title | S.L. et al v. County of Riverside et al | | |

officer's goal was to cause harm unrelated to a legitimate law enforcement objective. Porter v. Osborn, 546 F.3d 1131, 1140 (9th Cir. 2008).

As an initial matter, the Court finds that factual disputes exist regarding whether or not the individual defendants had time to deliberate in their interaction with Llamas, or whether Llamas' actions forced them to act quickly. Viewing the evidence in the light most favorable to plaintiffs, a reasonable juror could determine that the hours-long search, the directions provided by the police helicopter on Llamas' whereabouts, and the time the officers spent positioned on River Road before Llamas arrived provided Hubachek and McGuire with time to deliberate on their use of force. See Lennox v. City of Sacramento, No. 2:21-CV-02075-DAD-CSK, 2024 WL 3845378, at *26 (E.D. Cal. Aug. 16, 2024) ("Because there is a genuine dispute as to whether deliberation was feasible under the circumstances presented in this case, the court cannot conclude on summary judgment that the more demanding purpose-to-harm standard applies."). Applying the deliberate indifference standard, reasonable jurors could disagree as to the individual defendants' mental state, based on the evidentiary record. Accordingly, the Court finds that a triable issue exists as to whether the individual defendants had time for actual deliberation, and if so, whether they acted with deliberate indifference toward Llamas.

       3.    Qualified Immunity

Defendants argue that even if Hubachek and McGuire's actions constituted cognizable constitutional violations, they are both entitled to qualified immunity on the Fourth Amendment claim. Mot. at 11. Defendants contend that plaintiffs cannot point to any settled law prior to the incident that clearly, specifically established that the use of force under these circumstances was unreasonable. Id.

In opposition, plaintiffs argue that the Fourth Amendment violation was clearly established. Opp. at 13. Plaintiffs point to at least four cases that "clearly established, [by 2023], that shooting someone who is holding a gun but does not take threatening action with it, even where he is facing officers and fails to comply with commands, and even where officers are responding to what they believe is a crime in progress, constitutes excessive force." Id. at 15 (citing George v. Morris, 736 F.3d 829, 838–39 (9th Cir. 2013); Est. of Lopez by & through Lopez v. Gelhaus, 871 F.3d 998, 1013 (9th Cir. 2017); Curnow By & Through Curnow, 952 F.2d at 325; and Est. of Aguirre v. Cnty. of Riverside, 29 F.4th 624, 629–30 (9th Cir. 2022)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|------------------------|------|----------------|
| Title | S.L. et al v. County of Riverside et al | | |

In reply, defendants argue that none of the cases cited by plaintiffs "involved a suspect who continued to flee on foot following a vehicle collision, shot and killed a police dog, put a gun to his head[,] and kept moving closer to occupied residences without ever surrendering." Reply at 11. Defendants then describe how each case cited by plaintiffs is factually distinguishable. Id.

"Qualified immunity is an immunity from suit rather than a mere defense to liability," and therefore must be resolved "at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 231-32 (2009) (quotation omitted). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly" against "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. at 231. In excessive force cases, it protects officers in the "hazy border between excessive and acceptable force." Saucier v. Katz, 533 U.S. 194, 206 (2001) (quotation omitted). Accordingly, an officer will be denied qualified immunity in a Section 1983 action if, "(1) taken in the light most favorable to the party asserting injury, the facts alleged show that the officer's conduct violated a constitutional right, and (2) the right violated was 'clearly established' at the time of the incident such that a reasonable officer would have understood his conduct to be unlawful in that situation." Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011) (quoting Saucier, 533 U.S. at 201). Courts may address either prong first. Pearson, 555 U.S. at 236. "'[W]hether the violative nature of particular conduct is clearly established'… must be answered 'not as a broad general proposition,' but with reference to the facts of specific cases." Isayeva v. Sacramento Sheriffs Dep't, 872 F.3d 938, 947 (9th Cir. 2017) (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)).

Here, there are genuine disputes of material fact as to Llamas' actions leading up to and during the use of force. See supra Section IV(B)(1). Accordingly, summary judgment on the basis of qualified immunity is not appropriate. See Rosenbaum v. City of San Jose, 107 F.4th 919, 924 (9th Cir. 2024) ("Where factual disputes exist as to the objective reasonableness of an officer's conduct, the case cannot be resolved at summary judgment on qualified immunity grounds.").

Viewing the facts most favorably to plaintiffs, a jury could reasonably find that Llamas never pointed the gun at the officers, was not facing them when either set of shots were fired, never verbally threatened them, never physically "came at" them, and never expressed an intention to use the weapon on anyone but himself. In these circumstances,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|---|---|---|---|
| Title | S.L. et al v. County of Riverside et al | | |

the individual defendants would have been on notice of clearly established law that it was unreasonable to use deadly force against him.  See Est. of Lopez by & through Lopez, 871 F.3d at 1017–18 (Holding that it was clearly established, in 2013, that deadly force was unreasonable "where the suspect appears to be carrying an AK-47 [toward "several houses"], but where the officers have received no reports of the suspect using the weapon or expressing an intention to use the weapon, where the suspect does not point the weapon at the officers or otherwise threaten them with it, where the suspect does not 'come at' the officers or make any sudden movements towards the officers, and where there are no reports of erratic, aggressive, or threatening behavior."); Est. of Aguirre, 29 F.4th at 629 (Finding that precedent put defendant police officer on notice, as of 2013, that he had violated clearly established Fourth Amendment law when, viewing the facts most favorably to plaintiffs, the decedent was turned away from the officer, holding a "bat-like object," and failing to comply with the officer's demands, but not threatening or advancing toward any bystanders); George, 736 F.3d at 839 (Concluding that defendant deputies were not entitled to qualified immunity when they responded to a "domestic disturbance involving a firearm" and shot the decedent, as the parties genuinely disputed whether the decedent's gun was trained on the ground or pointed directly at the deputies when the shots were fired).

By way of comparison, the relevant facts in the instant qualified immunity analysis are entirely distinguishable from those in Smith v. Agdeppa, 81 F.4th 994, 1004 (9th Cir. 2023).  In Agdeppa, the Ninth Circuit held that a Fourth Amendment violation had not been "clearly established" when it was "undisputed that the officers were placed in a high-stress, rapidly developing situation involving a person who had reportedly assaulted a gym security officer and threatened others, and who was violently resisting the officers and assaulting them in an enclosed area."  Agdeppa, 81 F.4th at 1004.  Here, by contrast, it is undisputed that the events leading up to Llamas' final encounter with the individual defendants unfolded over many hours.  It is also undisputed that the immediate events leading up to the use of deadly force, beginning when the officers were stationed on River Road, occurred at least a "few minutes" prior to the shooting.  Further, there are no allegations by the individual defendants that Llamas violently resisted or assaulted them in an enclosed area at the time of the shooting, or that Llamas had reportedly assaulted a member of the public just before the encounter.

Accordingly, the individual defendants are not entitled to qualified immunity as a matter of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|---|---|---|---|
| Title | S.L. et al v. County of Riverside et al | | |

### C.   State Law Claims

#### 1.   Battery

Defendants argue that, because the same Fourth Amendment standard applies to battery claims based on excessive force, plaintiffs' battery claim fails for the same reason: Hubachek and McGuire's use of force was objectively reasonable.  Mot. at 14.

In opposition, plaintiffs argue that, viewing the facts in their favor, defendants used unreasonable force when they fired, without warning, at Llamas' back, when Llamas was not turning or moving the gun.  Opp. at 18.  Further, plaintiffs argue that McGuire used unreasonable force again when he fired, without warning, when Llamas was on the ground, wounded, crawling, and facing west.  Id.

In reply, defendants argue again that the battery claim fails for the same reasons that the Fourth Amendment claim fails.  Reply at 9.

The Court finds that there are genuine disputes of material fact regarding V.L.'s battery claim against the individual defendants, for the same reasons that there are genuine disputes of material fact regarding V.L.'s Fourth Amendment claim under Section 1983.  See supra Section IV(B)(1).

#### 2.   Negligence

Defendants argue that plaintiffs' negligence claim also fails because Hubachek and McGuire acted reasonably.  Mot. at 15.

In opposition, plaintiffs argue that California's negligence law also considers officers' pre-shooting tactics and decisions.  Opp. at 18-19.  Plaintiffs contend that defendants' tactics before the shooting were negligent, because they never discussed a response plan if Llamas were to cross the containment line, "even as they allowed him to do so by blocking him from turning left or right, without blocking his northward egress." Id. at 19.  According to plaintiffs, this lack of planning was particularly negligent because the officers claim they believed, at the time, that civilians may be present where the shooting occurred.  Id.  Further, plaintiffs argue that the individual defendants were negligent because they never issued commands or warnings, or attempted to utilize available cover or less-lethal weapons.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|------------------------|------|----------------|
| Title | S.L. et al v. County of Riverside et al | | |

In reply, defendants argue again that the negligence claim fails for the same reasons that the Fourth Amendment claim fails. Reply at 9. Defendants state that case law does not show that an officer's pre-shooting conduct can be actionable in negligence, or that an officer must choose the most reasonable action to avoid liability. Id. at 10.

The Court finds that there are genuine disputes of material fact regarding V.L.'s negligence claim against the individual defendants, for the same reasons that there are genuine disputes of material fact regarding V.L.'s Fourth Amendment claim under Section 1983. See supra Section IV(B)(1). The Court also recognizes that "California negligence law regarding the use of deadly force overall is 'broader than federal Fourth Amendment law.'" Tabares v. City of Huntington Beach, 988 F.3d 1119, 1125 (9th Cir. 2021) (citation omitted). Accordingly, this claim involves additional factual disputes regarding the individual defendants' "tactical conduct and decisions leading up to the use of deadly force," precluding summary judgment. See id.

3.      Bane Act

Defendants argue that plaintiffs' Bane Act claim fails because there is no evidence that defendants interfered with Llamas' legal rights by the use of threats, intimidation, or coercion, or that "independent" coercion was used. Mot. at 16.

In opposition, plaintiffs argue that, viewing the facts in their favor, defendants violated Llamas' right to be free from excessive force and acted with reckless disregard toward him. Opp. at 18. According to plaintiffs, evidence shows that there was no immediate threat when they fired, Llamas was moving away with his back turned, he did not point the gun at anyone besides himself, and the officers provided no warnings. Id.

In reply, defendants argue that plaintiffs fail to establish coercion independent from the coercion inherent in a Fourth Amendment violation. Reply at 10. Additionally, defendants contend that plaintiffs "incorrectly state than no warnings were given." Id.

"The Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018). However, the Bane Act does require "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." Id. Further, "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." Id. at 1045.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:24-cv-00249-CAS-SPx | Date | June 23, 2025 |
|----------|------------------------|------|----------------|
| Title | S.L. et al v. County of Riverside et al | | |

Viewing the record in the light most favorable to plaintiffs, the Court finds that a
reasonable juror could infer that Hubachek and McGuire violated Llamas' Fourth
Amendment rights.  See supra Section IV(B)(1).  Reasonable jurors could also disagree
as to Hubachek and McGuire's mental state at the time that deadly force was deployed.
Accordingly, the Court concludes that the individual defendants are not entitled to
judgment as a matter of law on this claim.

**V.    CONCLUSION**

        In accordance with the foregoing, the Court **GRANTS IN PART** and **DENIES IN
PART** defendants' motion.  The Court **GRANTS** the motion to the extent it seeks
dismissal of S.L.'s first, sixth, seventh, and eighth claims.  The Court **DENIES** the
motion in all other respects.

        IT IS SO ORDERED.

|  | 00 | : | 36 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |

# EXHIBIT B

1 | Eugene P. Ramirez (State Bar No. 134865)
2 |    *eugene.ramirez@manningkass.com*
3 | Lynn Carpenter (State Bar No. 310011)
   *lynn.carpenter@manningkass.com*
4 | Kayleigh Andersen (State Bar No. 306442)
5 |    *kayleigh.andersen@manningkass.com*
6 | **MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
7 | 801 S. Figueroa St, 15th Floor
8 | Los Angeles, California  90017-3012
Telephone:   (213) 624-6900
9 | Facsimile:   (213) 624-6999
10 |
11 | *Attorneys for Defendants County of Riverside,*
12 | *Shawn Hubachek and Jimmie McGuire*
13 |
14 | **UNITED STATES DISTRICT COURT**
15 | **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| S.L., a minor by and through the Guardian Ad Litem Kristine Llamas-Leyva, individually and as successor-in-interest to JOHNNY-RAY LLAMAS, *et al.*,<br><br>                 Plaintiffs,<br><br>         v.<br><br>COUNTY OF RIVERSIDE, *et al.*,<br><br>                 Defendants. | Case No. 5:24-cv-00249 CAS (SPx)<br><br>**Defendants' Representation Statement Under Federal Rule of Appellate Procedure 12(b) and Ninth Circuit Rule 3-2**<br><br>Judge:  Hon. Christina A. Snyder<br>Courtroom:  8D<br><br><br>Filed Date:   February 1, 2024<br>Trial Date:   October 7, 2025 |

In compliance with Rule 12(b) of the Federal Rules of Appellate Procedure and Rule 3-2 of the Ninth Circuit Rules, Defendants identify the following parties and their counsel in this action:

| Party | Counsel |
|---|---|
| Plaintiffs S.L., a minor by and through the Guardian Ad Litem, Kristine Llamas Leyva, individually and as successor-in-interest to JOHNNY RAY LLAMAS, deceased; and CAROLYN CAMPBELL, individually | Garo Mardirossian<br>Lawrence D. Marks<br>MARDIROSSIAN AKARAGIAN, LLP<br>6311 Wilshire Boulevard<br>Los Angeles, California  90048<br>Telephone:    (323) 653-6311<br>Facsimile:    (323) 651-5511<br>E-mail:        garo@garolaw.com<br>            Lmarks@garolaw.com |
| Plaintiff V.L., a minor by and through the Guardian Ad Litem, Amber Snetsinger, individually and as successor-in-interest to JOHNNY RAY LLAMAS, deceased | Dale K. Galipo<br>Shannon J. Leap<br>LAW OFFICES OF DALE K. GALIPO<br>21800 Burbank Boulevard, Suite 310<br>Woodland Hills, California  92367<br>Telephone:    (818) 347-3333<br>Facsimile:    (818) 347-4118<br>E-mail:        dalegalipo@yahoo.com<br>            sleap@galipolaw.com |
| Defendants County of Riverside, Shawn Hubachek, and Jimmie McGuire | Eugene P. Ramirez<br>Lynn Carpenter<br>Kayleigh Andersen<br>MANNING & KASS<br>ELLROD, RAMIREZ, TRESTER LLP<br>801 S. Figueroa St, 15th Floor<br>Los Angeles, California  90017-3012<br>Telephone:    (213) 624-6900 |

1

| | Facsimile:      (213) 624-6999<br>E-mail:   eugene.ramirez@manningkass.com<br>             lynn.carpenter@manningkass.com<br>             kayleigh.andersen@manningkass.com |
|---|---|

DATED:  July 18, 2025                    Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

_____/s/ Eugene P. Ramirez___
Eugene P. Ramirez
Lynn Carpenter
Kayleigh Andersen

*Attorneys for Defendants County of Riverside, Shawn Hubachek, and Jimmie McGuire*

2

Defendants' Representation Statement

## **PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 801 S. Figueroa St, 15th Floor, Los Angeles, CA 90017-3012.

On July 18, 2025, I served true copies of the following document(s) described as **DEFENDANTS COUNTY OF RIVERSIDE, SHAWN HUBACHEK, AND JIMMIE MCGUIRE'S NOTICE OF APPEAL** on the interested parties in this action as follows:

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kayleigh Ann Andersen**
  kayleigh.andersen@manningkass.com,delia.flores@manningkass.com

- **Lynn Louise Carpenter**
  Lynn.Carpenter@manningkass.com,Angela.Thompson@manningkass.com

- **Richard T Copeland**
  rtc@conflict-solution.com

- **Dale K Galipo**
  dalekgalipo@yahoo.com,dgilbert@galipolaw.com,blevine@galipolaw.com,evalenzuela@galipolaw.com,rvalentine@galipolaw.com,slaurel@galipolaw.com,CMayne@galipolaw.com,msincich@galipolaw.com,ldeleon@galipolaw.com,amonguia@galipolaw.com,coopermayne@recap.email,sanderson@galipolaw.com,hlee@galipolaw.com

- **Benjamin Stamler Levine**
  blevine@galipolaw.com

- **Garo Mardirossian**
  garo@garolaw.com,lourdes@garolaw.com

- **Lawrence D Marks**
  lmarks@garolaw.com,tdockweiler@garolaw.com,daniel@garolaw.com

- **Eugene P Ramirez**
  Eugene.Ramirez@manningkass.com,delia.flores@manningkass.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 18, 2025, at Los Angeles, California.

_/s/ Sandra Alarcon_
Sandra Alarcon